UNITED STATES of America, Plaintiff,

v.

**Larry A. COOK, Defendant.**

**Civ. A. No. 91–20077–01–GTV.**

United States District Court,
D. Kansas.

June 30, 1995.

Thomas F. McGraw, III, Thomas F. McGraw, III, Chartered, Overland Park, KS, Melanie J. Branham, Olathe, KS, for defendant.

Robert S. Streepy, Office of U.S. Atty., Kansas City, KS, for the U.S.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

The above-captioned case has been remanded to this court by the United States Court of Appeals for the 10th Circuit. The court of appeals in its opinion remanding the case instructed this court to: "(1) determine by expert testimony the chemical nature of DL-methamphetamine (sic)—i.e., whether DL-methamphetamine (sic) is simply a mixture of D-methamphetamine (sic) and L-methamphetamine (sic), or something else; and (2) resentence Defendant accordingly."

Abiding by the instructions of the court of appeals, an evidentiary hearing was conducted by this court on May 31, 1995, at which time both the government and the defendant offered the testimony of expert witnesses, and the matter was taken under advisement by the court until June 23, 1995, at which time the decision of the court was announced from the bench. This opinion is issued to memorialize the decision of the court in greater detail.

The government introduced the testimony of Sanford A. Angelos, a forensic chemist employed by the Drug Enforcement Administration. The defendant provided the testimony of Dr. Peter F. Lott, a professor of chemistry at the University of Missouri at Kansas City. The court concludes that there was little variation in the testimony of the two witnesses, and makes the following findings of fact based upon their testimony:

1. The terms d and l methamphetamine should be in small type (preferably in script form) so as to indicate optical rotation. Use of capital D and capital L have to do with the structure reference to glucose, and have nothing to do with optical rotation. The "l" stands for levorotatory or left rotation, and the "d" stands for dextrorotatory or right rotation. Use of the terms "d" or "l" refers to the property of a substance being able to rotate a plane of polarized light either to the left or to the right. They are referred to as optical isomers.

2. Both d and l are methamphetamines, but they stay molecularly different. They have all the same properties, except that d-methamphetamine bends polarized light to the right and l-methamphetamine bends polarized light to the left. These properties cause major differences in the effects produced by the substances. While l-methamphetamine is a bronchial dilator, d-methamphetamine is a central nervous system stimulant. Thus, the pharmacological differences in the two methamphetamines is significant.

3. The laboratory analysis in this case conducted by Mr. Angelos resulted in a determination that the substance in question was 440.7 net grams of dl-methamphetamine hydrochloride of a strength of 30%. dl-methamphetamine hydrochloride is the hydrochloride salt form of the racemic mixture of the d and l isomers of methamphetamine. It has a crystalline structure, and is complicated to separate.

4. Historically, clandestine laboratories used phenyl–2–propanone (p2p) as the primary precursor to produce dl-methamphetamine. All methods using p2p to produce methamphetamine resulted in the dl-methamphetamine mixture. It is not a third form itself, but is a racemic mixture of the d and l isomers of methamphetamine.

5. Simply mixing d and l methamphetamine in powder form does not produce dl-methamphetamine. In such a case you would have d-methamphetamine and l-methamphetamine. dl-methamphetamine is the product of a chemical process.

6. Both the expert witness called by the government and the expert called by the defendant agreed that dl-methamphetamine is the salt of methamphetamine isomers composed of equal quantities of d form methamphetamine and l form methamphetamine. In addition, Dr. Lott, defendant's expert gave testimony that if the definition of methamphetamine includes "its salts, its isomers and salts of isomers," the 132.2 grams of dl-

methamphetamine would fall within that definition of methamphetamine.

### Discussion.

The record developed in this case at the hearing on resentencing of the defendant is similar to that which was considered by the Tenth Circuit Court of Appeals in *United States v. Decker*, 55 F.3d 1509 (10th Cir. 1995), where the court held that 100% pure dl-methamphetamine, like 100% pure d-methamphetamine, should be treated as "methamphetamine (actual)" under § 2D1.1 of the sentencing guidelines.

In *Decker* the district court had treated the entire quantity of pure dl-methamphetamine recovered by the authorities as "methamphetamine (actual)" under the guidelines when it calculated the weight of the controlled substance. The court of appeals noted two reasons that the district court had not erred in calculating Decker's sentence. The first was that paragraph 5 of the Application Notes to U.S.S.G. § 2D1.1(c) directs that "all salts, isomers, and all salts of isomers" be included in the calculation of the weight of any given controlled substance. Consequently, even if "methamphetamine (actual)" refers only to pure d-methamphetamine, the sentencing court "was entitled to add the weight of the l-methamphetamine, an isomer of d-methamphetamine, to the weight of the d-methamphetamine."

The second reason given by the court of appeals in affirming Decker's sentence was that he had manufactured a substance containing d-methamphetamine and l-methamphetamine, both of which are controlled substances under § 2D1.1, and that

> [t]he guidelines instruct that '[i]f a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level.' U.S.S.G. § 2D1.1(c) note *. Thus, the district court's application of the guidelines was correct, even under defendant's theory. Under his theory, defendant manufactured a mixture containing 4.7 grams of d-methamphetamine, or 'methamphetamine (actual),' and 4.7 grams of l-methamphetamine. In this sit-

uation, the note directs the court to assign the weight of the entire mixture to the controlled substance carrying the greater offense level—in this case 'methamphetamine (actual).' The district court properly did so in this case.

*Decker*, 55 F.3d at 1513.

The record in the case now before this court supports the same determinations that were approved by the court of appeals in *Decker*. The weight of the entire 132.2 grams of dl-methamphetamine is to be used in calculating the quantity of the controlled substance here. As in *Decker*, the weight of the l-methamphetamine (50% of the racemic mixture or 66.1 grams), an isomer of methamphetamine, is added to the weight of the d-methamphetamine (the other 50% of the racemic mixture) for a total of 132.2 grams.

U.S.S.G. § 2D1.1(c)(4) calls for a base offense level of 32 for a quantity of at least 100 grams but less than 300 grams of methamphetamine (actual). The court finds that § 2D1.1(c)(4) is the provision of the guidelines applicable to the defendant Larry A. Cook, and that his base offense level is 32. He is entitled to a three-level decrease from the base offense level for acceptance of responsibility. His adjusted offense level is 29. His criminal history category is I. His imprisonment range is 87 to 108 months, and the court finds that a sentence of 87 months should be imposed.

**IT IS SO ORDERED.**