**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 9 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

CLIFFORD WESLEY COX;
LYNDELL LLOYD COX,

     Defendants-Appellants.

No. 97-6254
(D.C. Nos. 88-CR-225
&
CIV-96-1627
&
CIV-96-1628)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **PORFILIO** , **BARRETT** , and **HENRY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendants Clifford Wesley Cox and Lyndell L. Cox appeal the district court's denial of their joint 28 U.S.C. § 2255 motion to vacate, set aside, or correct their sentences for conspiracy to distribute methamphetamine. We have previously granted defendants' application for a certificate of appealability, see 28 U.S.C. § 2253(c), and we now reverse and remand the case for further proceedings.

Background

Defendants pled guilty in 1988, and were sentenced in 1989, to conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and unlawful manufacture of a destructive device in violation of 26 U.S.C. § 5861. The district court sentenced defendants Clifford Cox to nineteen years, seven months, and Lyndell Cox to twenty years' imprisonment, on the § 846 methamphetamine count, based upon forty-eight pounds of methamphetamine. Their sentences were affirmed on direct appeal. See United States v. Cox, Nos. 89-6087 and 89-6088 (10th Cir. Mar. 28, 1990) (unpublished disposition).

The government seized methamphetamine and phenyl-2-propanone (p2p), another controlled substance, from defendants' premises. The government's testing of the methamphetamine did not indicate the type of methamphetamine involved, nor did the government present any evidence at sentencing demonstrating the type of methamphetamine possessed by defendants. Under

-2-

the sentencing guidelines applicable to defendants' offenses, sentencing for

d-methamphetamine was substantially more severe than that for

l-methamphetamine, and the guidelines did not address a substance referred

to as d,l-methamphetamine. [1] Defendants' counsel failed to raise this issue at

sentencing or on direct appeal.

---

[1] Expert testimony in United States v. Cook, 891 F. Supp. 572, 573 (D. Kan. 1995), aff'd, No. 95-3233, 1996 WL 547332 (10th Cir. Sept. 26, 1996) (unpublished disposition) explained:

> Both d and l are methamphetamines, but they stay molecularly different. They have all the same properties, except that d-methamphetamine bends polarized light to the right and l-methamphetamine bends polarized light to the left. These properties cause major differences in the effects produced by the substances. While l-methamphetamine is a bronchial dilator, d-methamphetamine is a central nervous system stimulant. Thus, the pharmacological differences in the two methamphetamines [are] significant." Id.

At the time of defendants' sentencing, the applicable sentencing guidelines treated one gram of methamphetamine (type unspecified) as equivalent to 2.0 grams of cocaine or 0.4 grams of heroin, but treated one gram of l-methamphetamine as equivalent to only 0.2 grams of cocaine or .04 grams of heroin. See United States Sentencing Commission, Guidelines Manual (U.S.S.G.), § 2D1.1, Drug Equivalency Tables (Oct. 1987). As of November 1, 1995, the distinction between methamphetamine types has been eliminated and l-methamphetamine is now treated the same as d-methamphetamine under the Guidelines. See United States v. Glover, 97 F.3d 1345, 1347 n. 2 (10th Cir. 1996). However, because defendants were sentenced in 1989, the distinction between d and l methamphetamine applies in this case.

In their § 2255 motion, defendants assert that their counsel's failure to require the government to prove the type of methamphetamine involved in the conspiracy constituted ineffective assistance of counsel and deprived them of their due process rights. Defendants assert that the methamphetamine seized was l-methamphetamine, and that it could not have been d-methamphetamine because l-ephedrine, which they claim is a necessary precursor chemical to the manufacture of d-methamphetamine, was not found at their premises.

The government does not claim that the drug involved was d-methamphetamine. However, it argues that sufficient evidence was presented at the sentencing hearing for the district court in the § 2255 proceeding to determine that the type of methamphetamine involved in the conspiracy was d,l-methamphetamine. The government points to expert testimony at the sentencing hearing that p2p was seized from defendants' premises and that p2p is used to produce methamphetamine. Although the testimony at sentencing did not indicate what type of methamphetamine p2p produces, the government asserts that the p2p method produces d,l-methamphetamine. Because p2p was seized from defendants, the government argues the methamphetamine involved must have been d,l-methamphetamine. The government argues d,l-methamphetamine should be treated the same as d-methamphetamine for sentencing purposes, citing United States v. Decker, 55 F.3d 1509 (10th Cir. 1995).

Defendants respond that, while it is possible to manufacture d,l-methamphetamine from p2p, they were prepared to present expert testimony that it is equally possible to manufacture l-methamphetamine from p2p. They also point out, correctly, that there is no evidence in the record that p2p was found in the methamphetamine seized. They argue, therefore, that the mere seizure of p2p from their premises is insufficient circumstantial evidence from which to conclude the methamphetamine involved in their offenses was d,l-methamphetamine. They requested the district court to hold an evidentiary hearing to present expert testimony and evidence in support of their claims.

The district court found that even if defendants' counsel was incompetent in failing to object to the government's failure to prove the type of methamphetamine, defendants failed to establish that they were prejudiced by this alleged incompetence because the methamphetamine involved was "at least a combination of d and l-methamphetamine." Rec., doc. 235 at 3. See Strickland v. Washington, 466 U.S. 668, 686-88 (1984) (requiring objectively deficient performance serious enough to undermine the adversarial process and prejudice severe enough to deprive defendant of a fair trial in order to establish an ineffective assistance of counsel claim). The district court stated that "the evidence shows that defendants utilized the p2p method, the method which produces d,l methamphetamine." Rec., doc. 235 at 3-4. The court did not address

defendants' contention that the methamphetamine involved was l-methamphetamine, that no p2p was found in the methamphetamine seized or that p2p can also produce l-methamphetamine. The district court did not grant defendants' request for an evidentiary hearing to resolve these, or any other factual issues raised in the § 2255 motion. The district court held that defendants' prior sentence was proper and denied their § 2255 petition.

## Discussion

### I.

Defendants contend the district court erred in denying their request for an evidentiary hearing and in denying their §2255 motion, arguing the government failed to present sufficient evidence that the type of methamphetamine involved in their offenses was d-methamphetamine instead of the less potent l-methamphetamine. We agree.

"A claim of ineffective assistance of counsel presents a mixed question of law and fact which we review de novo." Brewer v. Reynolds, 51 F.3d 1519, 1523 (10th Cir. 1995). We accept the district court's factual finding that a specific isomer of methamphetamine was involved in criminal activity unless clearly erroneous. See id.; United States v. Lande, 40 F.3d 329, 330 (10th Cir. 1994). The government bears the "burden of proof and production to show by a preponderance of the evidence the type of methamphetamine involved" in the

-6-

offense of conviction.   United States v. Glover  , 97 F.3d 1345, 1347 (10th Cir. 1996) (citation omitted).

In Glover, we held that a defense counsel's failure to require the government to meet its burden of proof as to the type of methamphetamine involved in a drug offense constitutes ineffective assistance of counsel.   See id. at 1349-50.  We also held that a defendant's guilty plea did not obviate the need for substance-specific proof at sentencing.   Id. at 1347.  We further held that, because ineffective assistance claims are properly left to collateral proceedings, a defendant's failure to raise the sentencing challenge on appeal does not prevent him from raising it in his first § 2255 motion.   Id. at 1349.

In Glover, the district court had never considered the type of methamphetamine involved in the offenses at issue, either at sentencing or in the § 2255 proceedings.   See id. at 1350.  Accordingly, we remanded the action to the district court to determine, if it could, the type of methamphetamine involved in the defendant's offenses, with the instruction that if the government could not establish the substance was d-methamphetamine as required by the old sentencing guidelines, defense counsel's failure to challenge defendants' sentence in this regard would satisfy the performance and prejudice elements of     Strickland  and, therefore, constitute ineffective assistance of counsel.   Id.

Here, the government concedes the only evidence before the district court was the evidence previously presented at sentencing that p2p had been seized from defendants' premises and that p2p is used in the manufacture of methamphetamine. The government asserts that the p2p method produces only d,l-methamphetamine. It further asserts it was not required to present any further evidence because, it contends, "[a]ccording to United States v. Decker, 55 F.3d 1509 (10th Cir. 1995) and United States v. Cook, 891 F. Supp. 572 (D. Kan. 1995), it is already established that the P-2-P method produces only d,l-methamphetamine." Appellee's Br. at 4-5.

The government misstates the factual finding in Decker. In Decker, the applicable sentencing guidelines referred to "methamphetamine (actual)" for purposes of determining the weight of the methamphetamine involved in the offense. [2] 55 F.3d at 1510, 1511 n.3. Based on the district court's underlying factual conclusion that d,l-methamphetamine contains d-methamphetamine and l-methamphetamine, and that l-methamphetamine is an isomer of d-methamphetamine, we held that d,l-methamphetamine should be treated as "methamphetamine (actual)" because the sentencing guidelines require the sentencing court to add the weight of any isomer of d-methamphetamine to the

---

[2] The sentencing guidelines applicable to this case did not include a reference to "methamphetamine (pure)," or as later amended, to methamphetamine (actual).

weight of d-methamphetamine.    See id. at 1512-13; U.S.S.G. § 2D1.1 (c), comment. n. 5 (in calculating the weight of any given controlled substance, include "all salts, isomers and all salts of isomers").  We explained the underlying factual conclusion that d,l-methamphetamine contains d-methamphetamine and l-methamphetamine:

> Here, the government expert explained, and defense counsel acknowledged, that methamphetamine may be manufactured through two distinct methods:  the l-ephedrine method, which produces d-methamphetamine,   and the P2P method, which produces d,l-methamphetamine   .  Defendant here used the P2P method, and thereby produced a single substance that was not merely a "mixture" of d-methamphetamine and l-methamphetamine.  On this record, the district court correctly understood that the methamphetamine molecule exists in different isomeric forms (d-methamphetamine being the 'right-handed' isomer of its 'left-handed' mirror image, l-methamphetamine) and that d,l-methamphetamine is a single substance composed of exactly 50% of each of the two isomers.

Id. 55 F.3d at 1512 (emphasis added) (footnote omitted).

Decker did contain the factual statement that p2p produces d,l-methamphetamine.  However, contrary to the government's assertion, there is no finding in   Decker  that p2p produces   only  d,l-methamphetamine.  This distinction is, of course, critical, because the defendants assert they can present evidence that p2p also produces l-methamphetamine.

The government also fails to recognize that we based our factual conclusions in   Decker  about the characteristics of d,l-methamphetamine and the

use of p2p in the manufacture of d,l-methamphetamine on the testimony before the district court of the government's expert witness, which the defendant in Decker did not dispute. See id. at 1512. Thus, we never held, as a matter of precedent-creating law, that p2p produces d,l-methamphetamine.

The government's reliance on Cook, 891 F. Supp. 572, is equally misplaced. The district court in Cook did find that "clandestine laboratories used phenyl-2-propanone (p2p) as the primary precursor to produce dl-methamphetamine [and] all methods using p2p to produce methamphetamine resulted in the dl-methamphetamine mixture." Id. at 573. But Cook, like Decker, based its conclusions on expert testimony after conducting an evidentiary hearing; indeed, the case was before the district court on remand from this court with instructions to hold just such an evidentiary hearing. Id.

Here, in contrast, no evidence was presented with respect to the chemical nature of d,l-methamphetamine, or the use of p2p in the production of any particular type of methamphetamine, and the defendants dispute the government's unsupported assertion that p2p produces only d,l-methamphetamine. It is also a noteworthy distinction that it was undisputed in Decker and Cook that the methamphetamine involved was d,l-methamphetamine, whereas in this case, the purpose of the inquiry is to determine what type of methamphetamine was involved. Because different issues are at stake, different questioning and

-10-

cross-examination may lead to different factual conclusions than those reached in Decker and Cook.

The government's argument that it is not required to put on any evidence demonstrating that p2p produces only d,l-methamphetamine because other courts have reached factual conclusions about the use of p2p in effect requests this court and the district court to take judicial notice of a fact established in an unrelated proceeding, not subject to cross-examination by the defendants. "Judicial notice is an adjudicative device that alleviates the parties' evidentiary duties at trial, serving as 'a substitute for the conventional method of taking evidence to establish facts.'" York v. AT&T, 95 F.3d 948, 958 (10th Cir. 1996) (citing Grand Opera Co. v. Twentieth Century-Fox Film Corp., 235 F.2d 303, 307 (7th Cir. 1956)). Because judicial notice replaces the evidentiary procedure that would otherwise be necessary to establish adjudicative facts, courts can take notice without formal proof only where the fact in question is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The government has not yet demonstrated that its assertion that the p2p method produces only d,l-methamphetamine meets the standards for taking judicial notice. See York, 95 F.3d at 958 (judicial notice is appropriate

where a matter is verifiable with certainty); United States v. Wessels, 12 F.3d 746, 754 (8th Cir. 1993) (district court is not entitled to take judicial notice of its judicial experience to determine type of methamphetamine involved in defendant's offense for sentencing purposes).

Moreover, in response to a § 2255 motion, a district court "must hold an evidentiary hearing on the prisoner's claims '[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" United States v. Galloway, 56 F.3d 1239, 1240 n. 1 (10th Cir. 1995) (quoting § 2255). Our review of the record indicates that it did not conclusively show that defendants were entitled to no relief. The record lacked expert testimony regarding the characteristics of d,l-methamphetamine, the use of p2p in the manufacture of d-methamphetamine or d,l-methamphetamine, or defendants' claim that it is equally possible to produce l-methamphetamine using the p2p method.

Circumstantial evidence may be sufficient to determine the type of methamphetamine involved. See Lande, 40 F.3d at 331 (relying on circumstantial evidence to uphold finding that drug involved was d-methamphetamine). However, "'[t]here must be proof . . . to justify the added deprivation of liberty that follows the scoring of the drug as D-methamphetamine.'" United States v. Deninno, 29 F.3d 572, 580 (10th Cir. 1994) (quoting United States v. Patrick, 983

F.2d 206, 209 (11th Cir. 1993)).  The evidence in the record fails to show any link between the presence of p2p and d-methamphetamine or d,l-methamphetamine.  Without more, we cannot conclude that the government satisfied its burden of proving the type of methamphetamine used in the offense.

## II.

Defendants also contend that even if the substance was d,l-methamphetamine, d,l-methamphetamine should not be treated the same as d-methamphetamine for sentencing purposes.  We have held, as a matter of law, that, "if the substance or mixture involved in the offense contained any detectable amount of D-methamphetamine, the defendant may be sentenced at the higher [d-isomer] level."  Glover, 97 F.2d at 1350 n. 5 (citing  Decker, 55 F.3d 1509).  Defendants challenge the underlying scientific conclusions in  Decker, 55 F.3d at 1512, that d,l-methamphetamine contains a detectable amount of d-methamphetamine.  We do not address this issue, as it is premature given our conclusion that there is presently insufficient evidence to conclude that the methamphetamine involved in defendants' offenses was d,l-methamphetamine.  However, we note that the conclusion in  Decker that d,l methamphetamine contains detectable d-methamphetamine was a factual, rather than a legal conclusion, and was based on the undisputed factual record in that case.  See 55 F.3d at 1512.  On remand, if the district court determines the substance involved

in the offense was d,l methamphetamine, it should also resolve the factual question of whether d,l methamphetamine contains detectable d-methamphetamine.

The judgment of the United States District Court for the Western District of Oklahoma denying defendants relief under 28 U.S.C. § 2255 is REVERSED and the case is REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court

Robert H. Henry
Circuit Judge