[No. 22542-5-II. Division Two. November 20, 1998.]

THE STATE OF WASHINGTON, *Appellant,* v. THOMAS VAN WOERDEN, ET AL., *Respondents.*

---

*Christine O. Gregoire, Attorney General,* and *Gregory P. Canova* and *William B. Collins, Assistants,* for appellant.

*Charles H. Williams; G. Saxon Rodgers* of *Ditlevson, Rodgers & Hanbey, P.S.;* and *Jerome L. Buzzard* of *Buzzard & Allen,* for respondents.

ARMSTRONG, J. — The defendants, Thomas Van Woerden, Collette Queener, and Laura Russell, were charged with seven to ten counts of criminal mistreatment in the second degree. The defendants operated the OK Boys Ranch, a group home for dependent and delinquent boys, which was closed following allegations of sexual and physical abuse among residents and by staff members. The State's theory was that, as a result of the defendants' failure to protect them from abuse, 10 boys developed Posttraumatic Stress Disorder (PTSD). The statute under which the defendants were charged, RCW 9A.42.030, requires the State to prove, among other elements, that PTSD constitutes either "great bodily harm" or "substantial bodily harm." The trial judge dismissed the charges on the defendants' *Knapstad* motion, ruling in part that PTSD does not constitute "great bodily harm" or "substantial bodily harm." *State v. Knapstad,* 107 Wn.2d 346, 729 P.2d 48 (1986). The State appeals,

and we affirm, holding that under the statute PTSD is not within the meaning of great or substantial bodily harm.

## FACTS

The OK Boys Ranch was founded in 1971 and licensed as a group care facility. The Ranch contracted with the Department of Social and Health Services (DSHS) to provide a safe and therapeutic environment for dependent, adolescent boys. Thomas Van Woerden was the founder and director of the Ranch until 1993. Collette Queener was the assistant director and then director after Van Woerden retired. Laura Russell was the head counselor from the mid-1980s until 1993.

The Ranch had a troubled history before it was closed in 1994. In 1986, DSHS licensing agents expressed concern about physical violence being allowed without staff intervention. The staff promised correction. When DSHS audited the Ranch in 1988, they found rampant physical assaults and expressed concern about easy opportunities for residents to assault other residents sexually. Van Woerden filed a corrective action plan that was not carried out. Finally, in 1992, the Olympia Police Department investigated and found rampant, mostly sexual abusive activity. DSHS filed a stop placement order. Van Woerden once again filed a corrective action plan that was never carried out.

In November 1995, the State filed seven to ten counts of second degree criminal mistreatment against each defendant.[1] The allegations involved the mistreatment of 10 boys ages 11 through 13. The State alleged that there was pervasive physical and sexual violence at the Ranch and that the victims were physically and sexually assaulted by other residents. The staff allegedly knew about the violence but did nothing to stop it, and staff members frequently assaulted the victims as well. The State also alleged that staff members failed to give some victims prescribed medications and failed to provide sufficient food near the end of

---

[1] RCW 9A.42.030.

the Ranch's operation. All of the victims have been diagnosed with chronic and severe posttraumatic stress disorder.

The State's theory is that the defendants' failure to protect the boys from attack was a withholding of "shelter," a "basic necessity of life," and that this resulted in PTSD, which constitutes "great" or "substantial bodily harm" under the criminal mistreatment statute. Former RCW 9A.42.030 (1996) (amended 1997).

At the time the amended information was filed, the second degree criminal mistreatment statute provided:

> A parent of a child or the person entrusted with the physical custody of a child or dependent person is guilty of criminal mistreatment in the second degree if he or she recklessly either (a) creates an imminent and substantial risk of death or great bodily harm, or (b) causes substantial bodily harm by withholding any of the basic necessities of life.

Former RCW 9A.42.030(1) (1996) (amended 1997).

The defendants brought a *Knapstad* motion[2] to dismiss the charges, arguing (1) that they did not have "physical custody" of the boys; (2) that posttraumatic stress disorder does not constitute "great bodily harm" or "substantial bodily harm"; and (3) that their failure to supervise and protect the boys did not deprive them of "the basic necessi-

---

[2]The State Supreme Court recently set out the procedure for a *Knapstad* motion:

> Under [*State v.*] *Knapstad*, 107 Wn.2d [346,] 356, 729 P.2d 48 [(1986)], such a motion should be initiated by a sworn affidavit "alleging there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt." Then "[t]he State can defeat the motion by filing an affidavit which specifically denies the material facts alleged in the defendant's affidavit. If material factual allegations in the motion are denied or disputed by the State, denial of the motion to dismiss is mandatory." [*Knapstad*, 107 Wn.2d at 356] On the other hand, "[i]f the State does not deny the undisputed facts or allege other material facts," the court must decide "whether the facts which the State relies upon," as a matter of law, establish a prima facie case of guilt." [*Knapstad*, 107 Wn.2d at 356-57]. "Since the court is not to rule on factual questions, no findings of fact should be entered." [*Knapstad*, 107 Wn.2d at 357.]

*State v. Groom*, 133 Wn.2d 679, 684, 947 P.2d 240 (1997).

ties of life." Because we hold that PTSD does not constitute great or substantial bodily harm, we do not address the remaining issues.

### A. Does Posttraumatic Stress Disorder Constitute "Great Bodily Harm" or "Substantial Bodily Harm" under the Criminal Mistreatment Statute?

■ The State argues that PTSD constitutes either "great bodily harm" or "substantial bodily harm" under RCW 9A.42.030. The statute defines these terms as follows:

> (b) "Substantial bodily harm" means *bodily injury* which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part;

> (c) "Great bodily harm" means *bodily injury* which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily part or organ.

Former RCW 9A.42.010(2) (1996) (amended 1997) (emphasis added). The term "bodily injury," which is used in each subsection, is further defined as: "physical pain or injury, illness, or an impairment of physical condition[.]" RCW 9A.42.010(2)(a). Thus, under either (b) or (c) of the statute, *substantial bodily harm or great bodily harm* must amount to *bodily injury* (with varying consequences) which must be a *physical pain or injury, illness, or an impairment of physical condition*.

The State argues that PTSD meets either definition because it is either a bodily injury, i.e., an illness, or a physical condition that causes an impairment of the function of an organ, i.e., the brain. The State's reading of the statute raises two issues: (1) whether mental illness is included within the definition of bodily injury and (2) whether PTSD is "an impairment of physical condition."

**1. Are mental illnesses included within the definition of "bodily injury"?**

 The court's purpose in construing a statute is to ascertain and give effect to the intent and purpose of the Legislature. *State v. Williams*, 62 Wn. App. 336, 338, 813 P.2d 1293 (1991). To determine legislative intent, we look first to the language of the statute. Plain language does not require construction. *State v. Wilson*, 125 Wn.2d 212, 216, 883 P.2d 320 (1994). Undefined statutory terms are given their usual and ordinary meaning. *Nationwide Ins. v. Williams*, 71 Wn. App. 336, 342, 858 P.2d 516 (1993). When a statutory term is undefined, we may look to a dictionary for its ordinary meaning. *State v. Sunich*, 76 Wn. App. 202, 206, 884 P.2d 1 (1994). Finally, criminal statutes are given a strict and literal interpretation. *Wilson*, 125 Wn.2d at 216-17.

A statute is ambiguous if it is susceptible to two or more reasonable interpretations. *Sunich*, 76 Wn. App. at 206; *State v. Garrison*, 46 Wn. App. 52, 54, 728 P.2d 1102 (1986). If a statute is ambiguous, we look to other sources of legislative intent. *State v. Rhodes*, 58 Wn. App. 913, 915-16, 795 P.2d 724 (1990) (citing 3 CHARLES DALLAS SANDS, STATUTORY CONSTRUCTION § 59.03 (4th ed. 1986)). If there is no contrary legislative intent, we apply the rule of lenity, which resolves statutory ambiguities in favor of the criminal defendant. *In Re Personal Restraint of Sietz*, 124 Wn.2d 645, 652, 880 P.2d 34 (1994).

The State argues that the term "illness" includes both mental and physical illnesses. This is a reasonable construction. The common definition of illness is "an unhealthy condition of the body or mind." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1127 (1969). BLACK'S LAW DICTIONARY similarly defines illness as a "[s]ickness, disease or disorder of body or mind." BLACK'S LAW DICTIONARY 748 (6th ed. (1990)). In addition, the word "physical" does not modify "illness" as it does in the phrases preceding and following the word illness: " 'Bodily injury' means *physical* pain or injury, illness, or an impairment of *physical* condition[.]" RCW 9A.42.010(2)(a) (emphasis added).

 But two well recognized rules of statutory con-

struction, noscitur a sociis and ejusdem generis, suggest an alternative and equally reasonable construction of "illness." Under the doctrine of noscitur a sociis, the meaning of a word may be determined by reference to its relationship to other words in the statute. *Shurgard Mini-Storage v. Department of Revenue*, 40 Wn. App. 721, 727, 700 P.2d 1176 (1985) (citing *City of Mercer Island v. Kaltenbach*, 60 Wn.2d 105, 109, 371 P.2d 1009 (1962)). And under the doctrine of ejusdem generis, general words accompanied by specific words are construed to embrace only similar objects. *Southwest Wash. Chapter, Nat'l Elec. Contractors Ass'n v. Pierce County*, 100 Wn.2d 109, 116, 667 P.2d 1092 (1983). "The ejusdem generis rule is generally applied to general and specific words clearly associated in the same sentence in a pattern such as '[specific], [specific], or [general]' or '[general], including [specific] and [specific].' " *Electrical Contractors*, 100 Wn.2d at 116.

▮ The term "illness" is found within the definition of "bodily injury." The word "bodily" is synonymous with "physical' and "contrasts with mental or spiritual." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 245 (1969). Given that "illness" is found within a definition of bodily injury and is sandwiched between phrases denoting physical pain or injury and physical impairment, the doctrines of noscitur a sociis and ejusdem generis, suggest that the Legislature meant to include only physical illnesses within the definition.

Because the term "illness" is ambiguous and there is no legislative history that resolves this issue, the rule of lenity requires us to adopt the statutory construction most favorable to the defendants. Therefore, we hold that the statutory phrase "bodily injury" includes only physical illnesses.

2. Is Posttraumatic Stress Disorder the impairment of a physical condition?

The State also argues that PTSD meets the definition of "bodily injury" because it is the "impairment of physical condition." They argue that PTSD impairs the physical operation of the brain by "affecting the way the brain tells the body to react physically to various stimuli[.]"

To support their argument, the State submitted reports of several experts. One expert who conducted a case study of the OK Boys Ranch concluded that PTSD has physical manifestations such as "elevated cortisol, catecholamines, elevated heart rate, rapid startling, nervous irritability and rapid blink reflex."[3] Other reports also indicate that PTSD alters the neurochemical and neurobiologic systems of the brain.[4] "Although generally understood as a psychological disorder, PTSD also may be viewed from a biologic perspective. There is now accumulating evidence to suggest that severe psychological trauma can cause alterations in the organism's neurobiologic response to stress even years after the original insult."[5] PTSD alters brain chemistry leading to "hypervigilance, increased startle, affective lability, anxiety, dysphoria, and increased autonomic nervous system hyperreactivity."[6]

Thus, according to the State's evidence, PTSD is a psychological disorder that has measurable neurobiologic or chemical effects on the brain. The State argues that because PTSD alters the sufferer's brain chemistry, it is the impairment of a physical condition. But this is a simplification of the statutory requirement.

The term "impairment of physical condition" is one of the meanings of bodily injury. If we read the term into the definitions of "great bodily harm" and "substantial bodily harm," the error in the State's logic becomes apparent. " 'Great bodily harm' means [an impairment of physical condition] . . . which causes a permanent or protracted . . . impairment of the function of any bodily part or organ [i.e., the brain]." RCW 9A.42.010 (2)(c). " 'Substantial

---

[3]Gilbert Kliman, M.D., *Comments on Severe Psychological Traumas, as Related to the OK Boys Ranch Case: A Failure in Provision of Human Services* (July 31, 1994). *See* Clerk's Papers, at 56.

[4]*See* Eitan D. Schwartz and Bruce D. Perry, *The Post-Traumatic Response in Children and Adolescents*, 17 PSYCHIATRIC CLINICS OF N. AM., June 1994, at 312-13; Steven M. Southwick, et al., *Psychobologic Research in Post-Traumatic Stress Disorder*, 17 PSYCHIATRIC CLINICS OF N. AM., June 1994, at 250-60.

[5]Southwick, *supra* note 4, at 259-60.

[6]Schwartz and Perry, *supra* note 4, at 313.

bodily harm' means [an impairment of physical condition] . . . which causes a temporary but substantial . . . impairment of the function of any bodily part or organ [i.e., the brain]." RCW 9A.42.010(b).

■ Thus, under the statute, the State must prove that PTSD is an impairment of physical condition that causes an impairment of the functioning of the brain, not merely that PTSD impairs the functioning of the brain. Based on the evidence submitted by the State, PTSD is a psychological disorder that alters the functioning of the brain. Therefore, even though PTSD has measurable and perhaps "deleterious physiological impacts on the brain's functioning,"[7] it does not meet the definition of bodily injury because it is foremost the impairment of a mental, as opposed to a physical, condition.

## B. Attorney's Fees on Appeal

■ The defendants request attorney's fees, arguing that the appeal is frivolous. An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal. *Boyles v. Department of Retirement Sys.*, 105 Wn.2d 499, 507, 716 P.2d 869 (1986). Because this case presents debatable issues, we deny the request.

Affirmed.

BRIDGEWATER, A.C.J., and SEINFELD, J., concur.

Review denied at 137 Wn.2d 1039 (1999).

---

[7]Br. of Appellant, at 31.