33 P.3d 751 (2001)
108 Wash.App. 759
STATE of Washington, Respondent,
v.
Edward C. HALSTEN, Appellant.
No. 26149-9-II.
Court of Appeals of Washington, Division 2.
October 26, 2001.
*752 Manek R. Mistry, Backlund & Mistry, Chehalis, WA, for appellant (Court-appointed).
J. Andrew Toynbee, Deputy Pros. Atty., for respondent.
ARMSTRONG, C.J.
The State charged Edward Halsten with possessing pseudoephedrine with intent to manufacture methamphetamine because Halsten possessed cold tablets that contained pseudoephedrine hydrochloride. At trial, the State's expert testified that pseudoephedrine hydrochloride is pseudoephedrine, but also discussed some differences between pseudoephedrine hydrochloride and pseudoephedrine. Halsten moved to dismiss, arguing that pseudoephedrine hydrochloride was not the same as pseudoephedrine, which is the only drug the statute banned. The trial court denied Halsten's motion to dismiss, finding the evidence sufficient to support the jury's guilty verdict. Halsten appeals, arguing that the trial court misinterpreted the statute to include pseudoephedrine hydrochloride. We agree and, thus, reverse.

FACTS
Following a lawful search of Edward Halsten's car, a police officer found methamphetamine, isopropyl alcohol, coffee filters, and three boxes of Equate pseudoephedrine cold and allergy tablets. Further searching revealed toluene, receipts for some of the items, and a suitcase containing red phosphorous, latex gloves, and a utility knife.
The State charged Halsten with possessing pseudoephedrine or ephedrine with intent to manufacture and possession of a controlled substance. At trial, the State's expert, Jeffery Jagmin, explained the manufacturing process for methamphetamine, noting that pseudoephedrine is a precursor. Jagmin testified that the cold tablets seized from Halsten's car had pseudoephedrine hydrochloride as the active ingredient. He said people can process the cold tablets to extract pseudoephedrine. As a salt, pseudoephedrine hydrochloride has different solubility than pseudoephedrine, and pseudoephedrine hydrochloride has a chloride atom that pseudoephedrine lacks. He also testified that pseudoephedrine hydrochloride is pseudoephedrine. Jagmin said that the pseudoephedrine, toluene, alcohol, filters and red phosphorous indicated "the ability or at least the starting ability" to manufacture methamphetamine. RP II at 25.

ANALYSIS
Halsten argues that because RCW 69.50.440 specifically names only pseudoephedrine, possession of pseudoephedrine hydrochloride, a salt of pseudoephedrine, is not included within the statutory prohibition.
We review an issue of statutory construction de novo. New Castle Invs. v. City of LaCenter, 98 Wash.App. 224, 228, 989 P.2d 569 (1999), review denied, 140 Wash.2d 1019, 5 P.3d 9 (2000). Our purpose is to ascertain and carry out the legislature's intent. State v. Van Woerden, 93 Wash.App. 110, 116, 967 P.2d 14 (1998), review denied, 137 Wash.2d 1039, 980 P.2d 1286 (1999). We determine intent by first looking at the language of the statute. Van Woerden, 93 Wash.App. at 116, 967 P.2d 14. Statutory language is ambiguous if the reader can reasonably interpret it in more than one way. Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 808, 16 P.3d 583 (2001); Van Woerden, 93 Wash.App. at 116, 967 P.2d 14. If legislative intent is unclear, we may consider legislative history to resolve the ambiguity. Rozner v. City of Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991). The rule of lenity requires us to resolve ambiguities in criminal statutes in the criminal defendant's favor. Van Woerden, 93 Wash.App. at 116, 967 P.2d 14. We give criminal statutes a strict and literal interpretation. Van Woerden, 93 Wash.App. at 116, 967 P.2d 14.
Here, the statutory language is plain and clear. The statute names only pseudoephedrine, not pseudoephedrine hydrochloride.[1] And the legislature in other sections *753 of the Uniform Controlled Substances Act, Chapter 69.50 RCW, has specified that both a drug and its "salts" are covered. See, e.g., RCW 69.50.206(d)(2) (methamphetamine, its salts, isomers, and salts of its isomers); RCW 69.50.204(a) (opiates, including salts, esters, isomers); RCW 69.50.206(b)(4) (coca leaves and any salt, compound, derivative, preparation); RCW 69.50.210(b) (depressants, including salts, isomers, and salts of isomers).
Further, the legislature has recognized that pseudoephedrine exists in different forms. See RCW 69.50.210(d)(1) ("Cathine( + ) norpseudoephedrine)"). Thus, other parts of the Uniform Act demonstrate that when the legislature intended a section to cover a drug and its salts, it was capable of saying so. And we construe statutes so they make sense as a whole. State v. Keller, 143 Wash.2d 267, 277, 19 P.3d 1030 (2001). "Each provision must be viewed in relation to other provisions and harmonized, if at all possible...." Keller, 143 Wash.2d at 277, 19 P.3d 1030 (quoting State v. Thorne, 129 Wash.2d 736, 761, 921 P.2d 514 (1996)).
Moreover, even if the statute is ambiguous, we must construe it in Halsten's favor. See Van Woerden, 93 Wash.App. at 116, 967 P.2d 14. And to construe it in Halsten's favor, we must narrowly interpret the statute to cover only exactly what it says: pseudoephedrine.
But the State argues that the question is not statutory construction but sufficiency of the evidence. Specifically, the State points to the expert's testimony that pseudoephedrine hydrochloride is pseudoephedrine.[2] We disagree. The issue is not whether a chemist might consider the two drugs to be essentially same. Rather, the issue is what is meant by the statutory term "pseudoephedrine." And the meaning of a statutory term is a question of law to be decided by the court. Franklin County Sheriff's Office v. Sellers, 97 Wash.2d 317, 325-26, 646 P.2d 113 (1982).
The State argues that the legislature knew pseudoephedrine hydrochloride was a precurser material used to produce methamphetamine and that the legislature intended RCW 69.50.440 to prohibit the possession of large quantities of the otherwise legal drug. While this may be a sound argument from a policy standpoint, the court must resist the temptation to rewrite an unambiguous statute to suit its notions of what is good public policy. State v. Jackson, 137 Wash.2d 712, 976 P.2d 1229 (1999). The drafting of a statute is a legislative, not a judicial function. State v. Enloe, 47 Wash.App. 165, 170, 734 P.2d 520 (1987). By its plain language, RCW 69.50.440 applies only to pseudoephedrine. Accordingly, we reverse.
We concur: BRIDGEWATER, J., and QUINN-BRINTNALL, J.
NOTES
[1] Most state statutes prohibiting the possession of pseudoephedrine with intent to manufacture include the drug's salts. See ALA.CODE § 20-2-181(d)(15) (1997); ALASKA STAT. § 11.71.200(13) (2000); ARK.CODE ANN. § 5-64-415 (1997); CAL. HEALTH & SAFETY CODE § 11383 (Supp.2001); IDAHO CODE § 37-2707(g) (1994); 720 ILL. COMP. STAT. 570/102(z-1) (Supp.2001); IND.CODE § 35-48-4-14.5 (Supp.2000); IOWA CODE § 124.401(3) (1997); KAN. STAT. ANN. § 65-7006 (Supp.2000); MINN.STAT. § 152.135 (Supp.2001); MISS.CODE ANN. § 41-29-313(3)(c) (Supp.2000); MO.REV. STAT. § 195.246 (2000); OHIO REV.CODE ANN. § 3719.44(k)(3) (Supp.2000); OKLA. STAT. tit. 63, § 2-322(13) (1997); 35 PA. STAT. § 883(a)(17) (1993); UTAH CODE ANN. § 58-37c-20 (Supp. 2001); WYO. STAT. ANN. § 35-7-1058(a)(vi) (2001). Federal law also includes the salts of pseudoephedrine. 21 U.S.C. § 802(34)(K); (39)(A)(iv) (1994).
[2] We are not faced with the situation where a drug is known by different names. The expert testified that pseudoephedrine hydrochloride has different chemical properties than pseudoephedrine and a different solubility.