112 P.3d 1273 (2005)
STATE of Washington, Respondent,
v.
George Richard CROMWELL, Jennifer Shirley Reynolds-Cromwell, Appellants.
Nos. 52061-0-I, 52105-5-I.
Court of Appeals of Washington, Division 1.
May 31, 2005.
Kathryn A. Russell Selk, David Bruce Koch, Attorney at Law, Jennifer K. Ryan Gilman, Barrett Gilman & Ziker, Seattle, WA, for Appellants.
Amy R. Holt, King County Prosecutor's Office, Seattle, WA, for Respondent.

OPINION PUBLISHED IN PART
KENNEDY, J.
¶ 1 Appellants challenge their convictions for delivery and possession with intent to deliver methamphetamine under former RCW 69.50.401(a)(1)(ii). Relying upon State v. Morris, 123 Wash.App. 467, 474, 98 P.3d 513 (2004), they argue that they could not be convicted under the statute prohibiting possession and delivery of "methamphetamine" when the evidence presented established that they delivered and possessed salts of methamphetamine, not free base methamphetamine. Based on the expert criminalist's unrebutted testimony and the structure of the relevant statutes and schedules, we conclude the Legislature intended to penalize possession, delivery and possession with intent to deliver methamphetamine in any form. We therefore respectfully disagree with Morris and affirm the convictions here.[1]

FACTS
¶ 2 Following a series of undercover buys orchestrated by the Kent Police Department between paid confidential informant Kevin Collins and Jennifer Reynolds-Cromwell in February 2001, the State charged Reynolds-Cromwell and her husband George Cromwell with violations of former RCW 69.50.401(a)(1)(ii) for delivery of methamphetamine and possession of methamphetamine with intent to deliver. In particular, the State charged Jennifer Reynolds-Cromwell with four counts of delivery of methamphetamine, each with a school zone enhancement, *1274 and one count of possession with intent to deliver methamphetamine, with a firearms enhancement. The State charged George Cromwell as an accomplice on three counts of delivery of methamphetamine, each with a school zone enhancement, and one count of possession of methamphetamine with intent to deliver.
¶ 3 At trial, Dr. Edward Suzuki, a supervising forensic scientist at the Washington State Patrol Crime Lab, testified that all four substances delivered to Collins, as well as that recovered from the Cromwell residence, consisted of white powder containing methamphetamine. He testified that the substances were in the salt form, which may have been methamphetamine hydrochloride, the most common type, but he was certain that all the substances were salts.
¶ 4 Following Dr. Suzuki's testimony, the defendants moved to dismiss, arguing that they had been charged with crimes involving methamphetamine, but the proof was limited to salts of methamphetamine, a substance they argued was treated differently in the relevant statutes. The trial court denied the motion and the jury found Jennifer Reynolds-Cromwell guilty as charged, with the exception of the firearms enhancement, and found George Cromwell guilty of two counts of delivery and the lesser included crime of simple possession rather than the possession with intent to deliver. The trial court imposed exceptional sentences below the standard range for each defendant.
¶ 5 The defendants appeal, arguing that the evidence at trial was insufficient to support the verdicts because they were charged with delivery and possession under RCW 69.50.401(a)(1)(ii), which they contend prohibits delivery and possession of pure, that is, base methamphetamine, while the evidence at trial merely supported a finding that they possessed and delivered methamphetamine salts.

ANALYSIS

I
¶ 6 The State charged the defendants under former RCW 69.50.401(a)(1)(ii). Former RCW 69.50.401 provided:
(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
(1) Any person who violates this subsection with respect to:
....
(ii) amphetamine or methamphetamine, is guilty of a crime and upon conviction may be imprisoned for not more than ten years, or (A) fined not more than twenty-five thousand dollars if the crime involved less than two kilograms of the drug, or both such imprisonment and fine; or (B) if the crime involved two or more kilograms of the drug, then fined not more than one hundred thousand dollars for the first two kilograms ...;
(iii) any other controlled substance classified in Schedule I, II, or III, is guilty of a crime and upon conviction may be imprisoned for not more than five years[.]
¶ 7 Schedule II includes in pertinent part:
(d) Stimulants. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system:
(1) Amphetamine, its salts, optical isomers, and salts of its optical isomers;
(2) Methamphetamine, its salts, isomers, and salts of its isomers[.]
RCW 69.50.206.
¶ 8 The defendants contend that the term "methamphetamine" in former RCW 69.50.401(a)(1)(ii) includes only the liquid form of the drug, not methamphetamine in salt form. This court reviews questions of statutory construction de novo. State v. J.M., 144 Wash.2d 472, 480, 28 P.3d 720 (2001). When a statute is plain and unambiguous, its meaning must be derived from wording of the statute itself. State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001), cert. denied, 534 U.S. 1130, 122 S.Ct. 1070, 151 L.Ed.2d 972 (2002). This court must discern and carry out the intent of the Legislature, but must also avoid a literal interpretation *1275 leading to an absurd result. State v. Watson, 146 Wash.2d 947, 954-55, 51 P.3d 66 (2002).
¶ 9 In State v. Halsten, 108 Wash.App. 759, 762-63, 33 P.3d 751 (2001) another division of this court held that former RCW 69.50.440, prohibiting possession of "ephedrine, pseudoephedrine, or anhydrous ammonia with intent to manufacture methamphetamine," was plain and clear in that it named only pseudoephedrine, not pseudoephedrine hydrochloride. Given the other sections of the Uniform Controlled Substances Act, Chapter 69.50 RCW, covering both a drug and its "salts," as well as the section listing other forms of pseudoephedrine, the Halsten court concluded, "[W]hen the legislature intended a section to cover a drug and its salts, it was capable of saying so." Id. at 763, 33 P.3d 751.
¶ 10 In State v. Morris, 123 Wash.App. 467, 474, 98 P.3d 513 (2004) the same division similarly concluded that former RCW 69.50.401(a)(1)(ii) unambiguously covered only methamphetamine in its pure form, its base. Given the language of RCW 69.50.206(d)(2), for example, the court concluded that the Legislature recognizes that methamphetamine exists in different forms and is capable of writing a statute to cover a drug and its salts if it so intends. Id.
¶ 11 We respectfully disagree with the reasoning in Halsten and Morris. But even if Halsten was correctly decided, it is distinguishable in that it involved pseudoephedrine, which is not in and of itself a controlled substance; its possession is prohibited only when coupled with intent to manufacture methamphetamine. According to Schedule II, however, methamphetamine is a controlled substance in all its forms. RCW 69.50.206(a), (d)(2); former RCW 69.50.401(a)(1)(ii). Thus, we think that the key inquiry for determining the penalty for crimes involving methamphetamine is not the form of the drug, but what the defendant did with the drug or intended to do with it, and how much of it he or she had.
¶ 12 The penalty for delivery, manufacturing, and possession with intent to deliver or manufacture methamphetamine depends on the number of kilograms involved. See former RCW 69.50.401(a)(1)(ii)(A) & (B). As the State points out, the designation of kilograms, used to measure mass, not liquid, as the appropriate unit of measure for determining the penalty indicates that the Legislature did not intend former RCW 69.50.401(a)(1)(ii) to apply only to the liquid, free-base form of the drug.
¶ 13 We agree with the State's argument that reading the statute as the court did in Morris leads to a strained result. Under the Morris reasoning, former RCW 69.50.401(a)(1)(ii) would have prohibited possession and delivery of only a highly volatile oil that evaporates when exposed to air. As Dr. Suzuki testified, in his 23 years at the crime lab he did not recall receiving any liquid in a solution containing methamphetamine as a base, and the vast majority of cases involved methamphetamine in a powder or salt form. Moreover, Dr. Suzuki offered undisputed testimony that the white powder obtained from the Cromwells' residence contained methamphetamine. He also testified that methamphetamine in a powder or salt form is "just a different form of the material, but it is methamphetamine whether it's the base or salt form. It doesn't matter. It's the same drug." Verbatim Report of Proceedings 12/19/02 at 46-47.
¶ 14 In sum, it seems highly unlikely that the Legislature reserved the highest penalty for possessing and delivering methamphetamine only in its free base form, a form that is so volatile that it evaporates upon exposure to air and could easily be lost as evidence in the course of an investigation-and in a form that is so seldom if ever brought in to the state crime lab by investigating officers that Dr. Suzuki had never even seen it in 23 years of experience. We conclude instead that, depending upon the amount involved, the Legislature intended to penalize the possession with intent to deliver and delivery of amphetamine and methamphetamine in any form more harshly than the possession with intent and delivery of any other controlled substances listed in the Schedules. Accordingly, we affirm the trial court's ruling on this issue.
*1276 ¶ 15 A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.
WE CONCUR: SCHINDLER and AGID, JJ.
NOTES
[1] The appellants' remaining arguments are treated in the unpublished portion of this opinion.