140 P.3d 593 (2006)
157 Wash.2d 529
STATE of Washington, Respondent,
v.
George Richard CROMWELL and Jennifer Shirley Reynolds-Cromwell, Petitioners.
No. 77356-4.
Supreme Court of Washington, En Banc.
Argued March 23, 2006.
Decided August 10, 2006.
Kathryn A. Russell Selk, Russell Selk Law Office, David Bruce Koch, Nielson Broman & Koch PLLC, Seattle, for Petitioner/Appellant.
Carla Barbieri Carlstrom, King County Prosecutor's Office, Seattle, for Appellee/Respondent.
BRIDGE, J.
¶ 1 George Cromwell and Jennifer Reynolds-Cromwell each seek reversal of a conviction under former RCW 69.50.401(a)(1)(ii) (2002). They argue they were improperly convicted under that statute because it did not expressly impose punishment for possession, manufacture, or delivery of methamphetamine salts, isomers, or salts of isomers, but simply imposed punishment for those activities in reference to "methamphetamine." Thus, they contend that former RCW 69.50.401(a)(1)(ii) does not apply to the salt form of methamphetamine, only its base form. We disagree and hold that the plain language of former RCW 69.50.401(a)(1)(ii) encompasses all forms of methamphetamine. We affirm the Court of Appeals.

I

Facts and Procedural History
¶ 2 The Cromwells were arrested following a series of drug transactions with an informant of the Kent Police Department, in *594 which they sold him methamphetamine. Jennifer Reynolds-Cromwell was charged with four counts of delivery of methamphetamine and one count of possession with intent to deliver methamphetamine. George Cromwell was charged as an accomplice to three counts of delivery of methamphetamine and one count of possession of methamphetamine with intent to deliver. State v. Cromwell, 127 Wash.App. 746, 748, 112 P.3d 1273 (2005). Both were charged under former RCW 69.50.401(a)(1)(ii).
¶ 3 At trial, the State's forensic expert, Dr. Suzuki, testified that the substances delivered to the informant and recovered from the Cromwell residence all contained methamphetamine and were in a salt form, most likely methamphetamine hydrochloride. Cromwell, 127 Wash.App. at 748, 112 P.3d 1273. Following his testimony, the Cromwells moved to dismiss, asserting "that they had been charged with crimes involving methamphetamine, but the proof was limited to salts of methamphetamine, a substance they argued was treated differently in the relevant statutes." Id. at 749, 112 P.3d 1273. The Cromwells maintained that "methamphetamine" as it is used in former RCW 69.50.401(a)(1)(ii) means only pure methamphetamine, or base methamphetamine, which is an oily liquid. The trial court denied the motion. In reference to the methamphetamine charges, Reynolds-Cromwell was found guilty as charged, and Cromwell was found guilty of two counts of delivery and the lesser included crime of simple possession, rather than possession with intent to deliver.
¶ 4 The Cromwells appealed, arguing their motion to dismiss should have been granted. Division One of the Court of Appeals affirmed their convictions, reasoning that to interpret the statute as contended by the Cromwells would reach a "strained result." Cromwell, 127 Wash.App. at 751, 112 P.3d 1273. The record indicated that the base form of methamphetamine has no other purpose than to produce methamphetamine in a form for sale and is rarely recovered in drug transactions. The Court of Appeals thus concluded that the legislature obviously intended to encompass methamphetamine in all its forms by its use of the word "methamphetamine" in the statute. The Court of Appeals conceded that its conclusion conflicts with a decision from Division Two, State v. Morris, 123 Wash.App. 467, 98 P.3d 513 (2004), which holds that the word "methamphetamine" as used in former RCW 69.50.401(a)(1)(ii) does not include methamphetamine salts. The Cromwells appealed to this court, and we granted review on the conflict issue only.

II

Analysis
¶ 5 The former RCW at issue here, RCW 69.50.401(a)(1)(ii), is part of Washington's Uniform Controlled Substances Act. Under the act, methamphetamine is classified as a Schedule II drug. RCW 69.50.206(d). Former RCW 69.50.401(a)(1)(ii) imposes a maximum punishment of 10 years for possession, manufacture, or delivery of "methamphetamine." In contrast, former RCW 69.50.401(a)(1)(iii), a catch-all provision, states that manufacture, delivery, or possession of "any other controlled substance classified in [Schedule II]" is punishable by not more than five years in prison.
¶ 6 While RCW 69.50.206(d), the statute classifying methamphetamine as a Schedule II substance, makes specific reference to the salts, isomer, and salts of the isomers of methamphetamine, former RCW 69.50.401(a)(1)(ii) used the term "methamphetamine" without further elaboration. Therefore, the Cromwells argue that they were improperly charged under former RCW 69.50.401(a)(1)(ii) because they possessed the salt form of methamphetamine and that statute does not expressly include salt methamphetamine. They assert that they should have been charged under the catch-all provision contained in former RCW 69.50.401(a)(1)(iii), which imposes a five year maximum for all other Schedule II substances. Thus, they contend their charging document was insufficient and warrants reversal of their respective convictions.
¶ 7 The Cromwells support their argument with a line of cases from Division Two, cases that conflict with Division One's decision in this case. In State v. Halsten, Division Two *595 considered whether former RCW 69.50.440 (1997), a statute that criminalized possession of the methamphetamine ingredient pseudoephedrine, applied to a suspected methamphetamine manufacturer who possessed cold tablets containing pseudoephedrine hydrochloride. 108 Wash.App. 759, 33 P.3d 751 (2001). The Halsten court held that the statute at issue there did not encompass pseudoephedrine hydrochloride because the legislature did not specifically include the hydrochloride salt form of pseudoephedrine. Id. at 764, 33 P.3d 751. In Morris, Division Two adopted the reasoning in Halsten and applied it to the statute at issue here. 123 Wash.App. at 474, 98 P.3d 513. Morris held that methamphetamine as it is used in former RCW 69.50.401(a)(1)(ii) refers only to base methamphetamine (the liquid) and does not include methamphetamine hydrochloride (the salt). Id.
¶ 8 Rules of statutory interpretation require courts to give effect to the legislature's intent and purpose. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). In doing so, we look first to the plain meaning of a statute. See id. "When a statute is plain and unambiguous, its meaning must be derived from wording of the statute itself." Cromwell, 127 Wash.App. at 750, 112 P.3d 1273 (citing State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001)). We may also look to the dictionary to determine the meaning of nontechnical terms. State v. McDougal, 120 Wash.2d 334, 350, 841 P.2d 1232 (1992).
¶ 9 As the State's forensic expert repeatedly stressed, there is no difference between base methamphetamine and the salt form, other than their physical properties  which amounts to the difference between ice and water. Report of Proceedings (vol.5) at 46-49. The base and salt forms of methamphetamine are simply two forms of the same substance. Id. at 48-49, 841 P.2d 1232. Thus, "methamphetamine" is plainly synonymous with both the base and salt forms.
¶ 10 The Cromwells argue that the legislature means what it says, and we "`cannot add words . . . when the legislature has chosen not to include that language.'" Suppl. Br. of Pet'r Cromwell at 7 (quoting State v. Delgado, 148 Wash.2d 723, 727, 63 P.3d 792 (2003)). We are puzzled by this admonition because it is precisely what the Cromwells ask this court to do  that is, to add the word "base" rather than "salt" to the definition of methamphetamine where the legislature has expressly stated neither. Nothing in the plain language of the statute at issue prompts us to read the word "methamphetamine" to exclusively mean base or salt methamphetamine. Because the legislature did not expressly refer to the salt or base forms of methamphetamine in the statute, Cromwell's logic would compel us to find that methamphetamine as it is used in the statute has no meaning at all. We cannot construe a statute so that it is meaningless. See J.P., 149 Wash.2d at 450, 69 P.3d 318.[1]
¶ 11 The dictionary definition of methamphetamine supports the conclusion that "methamphetamine" means more than just its base form. The dictionary definition refers to the "crystalline hydrochloride" form of methamphetamine, which is a salt form of the substance. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1422 (2002). And as the Court of Appeals suggested, the conclusion that "methamphetamine" plainly includes the salt form of the drug is supported by the legislature's use of "kilogram" as a unit of measurement in corresponding statutes, rather than "liquid ounce," which might be exclusively applied to a liquid. Cromwell, 127 Wash.App. at 752, 112 P.3d 1273.[2]
*596 ¶ 12 In sum, base and salt methamphetamine are the same chemical substance.[3] Moreover, the salt form is encompassed by the dictionary definition of methamphetamine. And, given the frequency with which the salt form is recovered by law enforcement, it is reasonable to infer that the commonly understood definition of "methamphetamine" includes its salt form. Thus, we hold that when the legislature used the word "methamphetamine" in former RCW 69.50.501(a)(1)(ii), that word included all forms of the substance.
¶ 13 The plain meaning of methamphetamine also sufficiently resolves the conflict between the divisions regarding former RCW 60.50.401(a)(1)(ii) in favor of Division One. Cromwell is distinguishable from Halsten, on which Morris, the case in conflict with Cromwell, relied. In Halsten, the defendant was charged under former RCW 69.50.440 with possession of pseudoephedrine with intent to manufacture. In actuality, he possessed cold pills, which contain pseudoephedrine hydrochloride, from which pseudoephedrine can be extracted, which can then be used to manufacture methamphetamine. At best, then, the defendant in Halsten possessed a precursor to an ingredient of methamphetamine manufacture, which was not itself a controlled substance under the charging statute there.
¶ 14 In contrast, the Cromwells, like the defendant in Morris, were charged under former RCW 69.50.401(a)(1)(ii) with possession of the controlled substance methamphetamine and were found guilty of possessing a substance identified as methamphetamine. Halsten is thus distinguishable by its facts. To the extent that it conflicts with this opinion, however, Morris is disapproved.

III

Conclusion
¶ 15 Base methamphetamine and its salt form are the same chemical substance. Converting the liquid base into solid methamphetamine salt is merely a functional refinement. On its face, methamphetamine as referenced in former RCW 69.50.401(a)(1)(ii) plainly means all forms of the substance. The Court of Appeals is affirmed.
Concurring: ALEXANDER, C.J., C. JOHNSON, MADSEN, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, JJ.
SANDERS, J. (dissenting).
¶ 16 The majority bases its decision on the State's forensic expert who "repeatedly stressed, there is no difference between base methamphetamine and the salt form, other than their physical propertieswhich amounts to the difference between ice and water." Majority at 595 (citing Report of Proceedings (RP) (Vol.5) at 46-49). I doubt the majority would be so indifferent to the distinction between ice and water were it poised to dive into a frozen lake.
¶ 17 The statute at issue prohibits the manufacture, delivery, or possession of methamphetaminenot the salts of methamphetamineand does not state the salts of methamphetamine are the same as methamphetamine. *597 Moreover a separate statute, not charged here, expressly criminalizes delivering salts of methamphetamine. Although the expert testified salt and liquid methamphetamine were different forms of the same substance, "[t]he issue is not whether a chemist might consider the two drugs to be essentially same. Rather, the issue is what is meant by the statutory term[s]." State v. Halsten, 108 Wash.App. 759, 763, 33 P.3d 751 (2001).
¶ 18 The former statute provides:
(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
(1) Any person who violates this section with respect to:
. . .
(ii) amphetamine or methamphetamine, is guilty of a crime and upon conviction may be imprisoned for not more than ten years, or (A) fined not more than twenty-five thousand dollars if the crime involved is less than two kilograms of the drug, or both such imprisonment and fine; or (B) if the crime involved two or more kilograms of the drug, then fined not more than one hundred thousand dollars for the first two kilograms . . . .
(iii) any other controlled substance classified in Schedule I, II, or III, is guilty of a crime and upon conviction may be imprisoned for not more than five years . . . .
. . . .
Former RCW 69.50.401(a)(1)(ii), (iii) (2002) (emphasis added).
¶ 19 Schedule II provides:
(d) Stimulants. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system:
(1) Amphetamine, its salts, optical isomers, and salts of its optical isomers;
(2) Methamphetamine, its salts, isomers, and salts of its isomers;

. . . .
RCW 69.50.206(d)(1), (2) (emphasis added).
¶ 20 By so defining delivery crimes, the legislature made a distinction between a person who delivers "methamphetamine," subject to a maximum sentence of 10 years, and one who delivers a Schedule II controlled substance, who is subject to a maximum sentence of 5 years. This distinction makes the difference between a 5 and 10 year maximum sentence.
¶ 21 Former RCW 69.50.401(a)(1)(ii) as written was unambiguous and rational. Drafting a statute is a legislative not a judicial function. State v. Jackson, 137 Wash.2d 712, 725, 976 P.2d 1229 (1999). The court's role is to interpret the law as it is, or in this case, as it was writtennot as it could or even should have been written. Id.
¶ 22 Attempting to engraft into the statute "salts," the majority states that the defendants in this case were asking the court to add onto the statute the word "base." Majority at 595. However, the majority's analysis ignores the canons of statutory construction and the reasoning based on Morris[1] and Halsten, and inevitably departs from "a long history of restraint" in compensating for perceived legislative omissions. State v. Taylor, 97 Wash.2d 724, 728, 649 P.2d 633 (1982).

I. The Statutes Plainly Differentiate Between Methamphetamine and "Salts" of Methamphetamine
¶ 23 Issues of statutory construction are reviewed de novo to ascertain and carry out the legislature's intent. New Castle Invs. v. City of LaCenter, 98 Wash.App. 224, 228, 989 P.2d 569 (1999); State v. Van Woerden, 93 Wash.App. 110, 116, 967 P.2d 14 (1998). Intent is determined by looking at the language of the statute. Van Woerden, 93 Wash.App. at 116, 967 P.2d 14. If the language is plain, then it requires no construction. State v. Wilson, 125 Wash.2d 212, 217, 883 P.2d 320 (1994) ("Plain language does not require construction."). We have held that "[c]ourts should assume the Legislature means exactly what it says"even if the court disagrees with the result or finds the result distressing. *598 State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001). See also State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003); State v. Groom, 133 Wash.2d 679, 689, 947 P.2d 240 (1997) ("[H]owever much members of this court may think that a statute should be rewritten, it is imperative that we not rewrite statutes to express what we think the law should be . . . . even if the results appear unduly harsh." (citations omitted)). Finally, this court has made it clear that courts "cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." State v. Delgado, 148 Wash.2d 723, 727, 63 P.3d 792 (2003).
¶ 24 When defining drug delivery crimes, the legislature distinguished "methamphetamine" from other substances, which included methamphetamine's "salts, isomers, and salts of its isomers." Compare RCW 69.50.206(a) with RCW 69.50.206(d)(2).
¶ 25 Exclusion of language from one statute when included in others indicates an intent to do so. See, e.g., Delgado, 148 Wash.2d at 729, 63 P.3d 792; City of Seattle v. Parker, 2 Wash.App. 331, 335, 467 P.2d 858 (1970) ("Expressio unis est exclusio alterius. The expression of one thing is the exclusion of another."). By applying this canon, the plain language must mean only manufacture, delivery, or possession of the base form of methamphetamine, and not its salts, isomers, or salts of its isomers, is prohibited under the former statute.
¶ 26 Thus reasoned the Court of Appeals Division Two in Morris, 123 Wash.App. 467, 98 P.3d 513, where the Court of Appeals held the plain language of former RCW 69.50.401(a)(1)(ii) was "unambiguous" and included only the liquid form of methamphetaminebut not its salts, isomers, or salts of isomers, which are governed instead by former RCW 69.50.401(a)(1)(iii).
¶ 27 The court held since the legislature had specified methamphetamine's "salts, isomers, and salts of its isomers" in Schedule II[2] but not in former RCW 69.50.401(a)(1)(ii), the language of former RCW 69.50.401(a)(1)(ii) was "unambiguous" and "covers only methamphetamine in its pure form, its base." Morris, 123 Wash.App. at 474-75, 98 P.3d 513. The court then noted even if the statute were ambiguous the result would be the same with application of the rule of lenity. Id. at 474 n. 6, 98 P.3d 513.
¶ 28 Morris followed Halsten, 108 Wash. App. 759, 33 P.3d 751, which in turn relied on Jackson, 137 Wash.2d 712, 976 P.2d 1229, which held the legislature's inclusion of certain language in statutes and the failure to include it in others compelled the conclusion that the Legislature made a deliberate choice, and it was not proper for the court to "read into" the statute that which is not there based upon the court's opinion of what would be sound policy. Id. at 724, 976 P.2d 1229.
¶ 29 In Halsten the court determined pseudoephedrine hydrochloride was not pseudoephedrinethe possession of which was prohibited. Halsten concluded the legislature's reference to "salts" in one part of the code but not in another was clear and plain, and meant salts were not included in the latter. Halsten, 108 Wash.App. at 763, 33 P.3d 751. Division Two held the differing statutory language "demonstrate[s] that when the legislature intended a section to cover a drug and its salts, it was capable of saying so." Id.
¶ 30 The Halsten court also rejected the prosecution's attempt to have the court effectively add reference to salts into the statute based upon the theory that the Legislature probably meant to cover salts as well because "[t]he drafting of a statute is a legislative, not a judicial function," id. at 764, 33 P.3d 751, and warned: "[T]he court must resist the temptation to rewrite an unambiguous statute to suit its notions of what is good public policy." Id.
¶ 31 Similarly in Jackson this court applied the same fundamental principles to hold the legislature's inclusion of certain language in some statutes while failing to include it in others compelled the conclusion the legislature made a deliberate choice. Jackson, 137 Wash.2d at 724, 976 P.2d 1229. We made it clear that it was not a proper judicial function to "read into" a statute that which the *599 legislature did not include. Id. Moreover, we concluded even if the statute had been ambiguous, it would be "required under the rule of lenity to adopt the interpretation most favorable to the defendant." Id. at 729, 976 P.2d 1229. Applying Jackson we should likewise conclude salts, isomers, and salts of its isomers were not included in subsection (ii) of former RCW 69.50.401(a)(1).
¶ 32 The majority refuses to follow Morris and Halsten and instead engages in second-guessing what the legislature meant to say, concluding based on the expert's testimony the base and salt forms of methamphetamine are the same chemical substance, and "given the frequency with which the salt form is recovered by law enforcement, it is reasonable to infer that the commonly understood definition of `methamphetamine' includes its salt form." Majority at 596 (emphasis added). I disagree. It is neither reasonable nor proper for this court to infer that the unqualified use of "methamphetamine" under former RCW 69.50.401(a)(1)(ii) includes all forms of the substance.

II. Courts Have Recognized Different Sentences for Different Forms
¶ 33 Other states impose different punishments for possession of different forms of the same substance. See, e.g., United States v. Stevens, 19 F.3d 93, 96 (2d Cir.1994). In Stevens the defendant challenged the sentencing guidelines on equal protection grounds because they treated crack and powder cocaine differently, although each had the same chemical properties. The Second Circuit analyzed the sentencing scheme to determine whether it was rationally related to a government purpose, Stevens, 19 F.3d at 96, and quoted United States v. Haynes, 985 F.2d 65, 70 (2d Cir.1993):
"A downward departure may not be predicated on the fact that penalties for cocaine crack are more severe than those involving cocaine. A departure on such basis is not permitted because the enhanced penalties for crack reflect a rational and specific congressional aim of deterring drug transactions involving crack. The purpose is obvious  crack cocaine is the most addictive and destructive form of cocaine, and because it is also cheaper it is more widely available and has had therefore a corresponding increase in usage."
Stevens, 19 F.3d at 97 (quoting Haynes, 985 F.2d at 70). The court found the United States Congress had a rational reason to differentiate between the two forms of the same substance:
This passage makes plain our view that Congress had a valid reason for mandating harsher penalties for crack as opposed to powder cocaine: the greater accessibility and addictiveness of crack. See also United States v. Buckner, 894 F.2d 975, 978-79 & n. 9 (8th Cir.1990) (detailing congressional hearings in which legislators and drug abuse experts commented on the perils of crack versus powder cocaine).
Id. It buttressed its decision by pointing out that other circuits have upheld different punishments for different forms of the same drug:
[W]e join six other circuits that have similarly held that the Guidelines' 100 to 1 ratio of powder cocaine to crack cocaine has a rational basis and does not violate equal protection principles. See United States v. Reece, 994 F.2d 277, 278-79 (6th Cir.1993) (per curiam); United States v. Williams, 982 F.2d 1209, 1213 (8th Cir. 1992); United States v. Frazier, 981 F.2d 92, 95 (3d Cir.1992), cert. denied, [507 U.S. 1010,] 113 S.Ct. 1661, 123 L.Ed.2d 279 (1993); United States v. Galloway, 951 F.2d 64, 65-66 (5th Cir.1992) (per curiam); United States v. Turner, 928 F.2d 956, 959-60 (10th Cir.), cert. denied, [502 U.S. 881,] 112 S.Ct. 230, 116 L.Ed.2d 187 (1991); and United States v. Lawrence, 951 F.2d 751, 754-55 (7th Cir.1991). Although not directly referring to the 100 to 1 ratio challenged by Seagers, four other circuits have also rejected equal protection challenges to the enhanced penalty structure for crack offenses. See United States v. King, 972 F.2d 1259, 1260 (11th Cir.1992) (per curiam); United States v. Harding, 971 F.2d 410, 412-14 (9th Cir.1992), cert. denied, [506 U.S. 1070,] 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993); United States v. Thomas, 900 F.2d 37, 39-40 (4th Cir.1990); and United States v. Cyrus, 281 U.S.App. *600 D.C. 440, 890 F.2d 1245, 1248 (D.C.Cir. 1989). But see United States v. Willis, 967 F.2d 1220, 1226-27 (8th Cir.1992) (Heaney, J., concurring) (criticizing 100 to 1 ratio); [State v.] Russell, 477 N.W.2d [886,] 888 [Minn. 1991] (invalidating Minnesota's differential penalty scheme for crack and powder cocaine under equal protection clause of Minnesota Constitution).
Id.
¶ 34 Contrary to the majority's position that the salt and base forms of methamphetamine are essentially the same, other courts have distinguished between these forms. For example, in United States v. Cook, 891 F.Supp. 572, 573 (D.Kan.1995), the court was asked to determine by expert testimony the chemical nature of two different types of methamphetamine isomers. The court held:
Both [isomers] are methamphetamines, but they stay molecularly different. They have all the same properties, except [one isomer] bends polarized light to the right and [the other isomer] bends polarized light to the left. These properties cause major differences in the effects produced by the substances. [One isomer] is a bronchial dilator, [the other isomer] is a central nervous system stimulant. Thus, the pharmacological differences in the two methamphetamines are significant.
Id. The two different methamphetamine isomersL and D methamphetamine isomers and their different effects, were also recognized in United States v. Sieruc, 1996 WL 383305, at *1, 1996 U.S. Dist. LEXIS 9495, at *3-4 (E.D.Pa.1996). That court held:
L-methamphetamine "produces little or no physiological effect when ingested" while D-methamphetamine "produces the physiological effect desired by its users." The Bogusz court noted that because of this difference, the Sentencing Guidelines treat L-methamphetamine much less severely than D-methamphetamine. Specifically, the reference to L-methamphetamine appears only in the Guidelines' Drug Equivalency Tables in the Commentary to section 2D1.1. In contrast, the Drug Quantity Tables, under section 2D1.1(c), refer only to "methamphetamine" and "methamphetamine (actual)". As a result, the Bogusz court concluded that the "references to methamphetamine and methamphetamine (actual) in the Drug Quantity Tables of section 2D1.1(c) refer solely to quantities of D-methamphetamine." The Court stated that the government has the burden of proving by a preponderance of the evidence the exact isomeric composition of the methamphetamine (D or L) involved.
Sieruc, 1996 WL 383305, *1, 1996 U.S. Dist. LEXIS 9495, *3-4 (citations omitted) (quoting United States v. Bogusz, 43 F.3d 82, 89 (3d Cir.1994)). We likewise should not conclude this is a distinction without a difference.

III. Under the Majority's Reasoning the Statute is Ambiguous
¶ 35 Given former RCW 69.50.401(a)(1)(iii), read in conjunction with RCW 69.50.206(d)(2), explicitly includes "salts" of methamphetamine while former RCW 69.50.401(a)(1)(ii) does notif the latter is arguably susceptible to more than one reasonable interpretation, it is ambiguous. First among the canons of criminal statutory construction is the rule of lenity, which commands we strictly construe ambiguous statutes in favor of the defendant and against the State. See State v. Jacobs, 154 Wash.2d 596, 603, 115 P.3d 281 (2005); United States v. Enmons, 410 U.S. 396, 411, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973) (criminal statutes "must be strictly construed, and any ambiguity must be resolved in favor of lenity").
¶ 36 Construing the statute in Cromwell's favor the prosecution would be required to provide evidence that the substance delivered was "methamphetamine." However, Dr. Suzuki testified unequivocally that the substances in this case were not methamphetamine but rather salts of methamphetamine. RP (vol.5) at 46, 50-52.
¶ 37 Because "salts of methamphetamine" and "methamphetamine" are not treated by the legislature in the same way, under the plain language of the statutes and the rule of lenity (if the language isn't so plain), the prosecution did notand could notprove by sufficient evidence the charged crime. *601 Therefore the conviction should be reversed and the case dismissed.
¶ 38 I dissent.
NOTES
[1] In Delgado, the State asked us to construe an unambiguous statute so that it included a comparability clause. Delgado, 148 Wash.2d at 727-28, 63 P.3d 792. But nothing in the statute at issue in Delgado "directly included a comparability clause, nor [indirectly] incorporated [a relevant definition that would encompass a comparability clause]." Id. at 728-29, 63 P.3d 792. Thus, the language the State sought to insert was entirely lacking from the statute. Here, "methamphetamine" itself necessarily includes its salt form and base form. In affirming the Cromwells' convictions, we are not asked to read into the statute language we believe was omitted. Rather, we merely read the plain meaning of methamphetamine in RCW 60.50.401(a)(1)(ii), which encompasses all forms of methamphetamine, including its salt form.
[2] The Cromwells cite two federal cases that use "kilogram" in reference to the liquid form of the drug. Suppl. Br. of Pet'r Reynolds-Cromwell at 8. But one case they cite uses kilogram in reference to both liquid and refined methamphetamine, and thus does nothing to refute the conclusion that "methamphetamine" means all forms of the substance. See United States v. Valensia, 299 F.3d 1068, 1072 (9th Cir.2002).
[3] The dissent points to case law from federal courts that distinguishes between different types of methamphetamine. Dissent at 600. But in those cases the distinction at issue concerned whether a quantity of recovered methamphetamine was comprised more predominately of an "L isomer" versus a "D isomer," not whether that quantity of isomer-carrying methamphetamine was in base or salt form. United States v. Cook, 891 F.Supp. 572, 573-74 (D.Kan.1995); United States v. Sieruc, 1996 WL 383305, *3, 1996 U.S. Dist. LEXIS 9495, at *2 (E.D.Pa.1996); United States v. Bogusz, 43 F.3d 82, 88-89 (3d Cir.1994). Here we have a question about form, not composition. As the dissent acknowledges, methamphetamine composed primarily of the innocuous "L isomer" does not produce the same intense chemical reaction in the user as that of the "D isomer," and it therefore may be reasonable to distinguish between them for sentencing purposes. Dissent at 600 (citing Sieruc, 1996 WL 383305, at *1, 1996 U.S. Dist. LEXIS 9495, at *3-4 and Bogusz, 43 F.3d at 89). In contrast, no evidence here suggests that a different chemical reaction is achieved by use of the salt form over base or vice versa.
[1] State v. Morris, 123 Wash.App. 467, 98 P.3d 513 (2004).
[2] RCW 69.50.206(d)(2).