[No. 20901-9-I.   Division One.   April 3, 1989.]

THE CITY OF TUKWILA, *Petitioner,* v. BRUCE NALDER, *Respondent.*

WILLIAMS, J. Pro Tem., dissents by separate opinion.

*Cameron G. Comfort* and *Ogden, Murphy & Wallace,* for petitioner.

*Paul Bernstein,* for respondent.

PEKELIS, J.—On discretionary review, the City of Tukwila appeals a superior court reversal of Tukwila Municipal Court's denial of Bruce Nalder's motion to suppress evidence. The City assigns error to the Superior Court's finding that Nalder's right to privacy under the Fourth Amendment and under the Washington State Constitution, article 1, section 7 was violated when the arresting officer, "without probable cause, deliberately looked into the toilet stall to observe [his] activities." We affirm.

I

On November 26, 1986, Tukwila Detective Chris Hurst entered a public rest room located in Southcenter Mall as part of his regular plainclothes patrol duty. He had no specific information that anyone in the rest room was violating the law at that time. As Hurst walked toward the far stall, he noticed that an individual was peering through the crack between the door of the stall and the support post. This drew his attention as being unusual, because one seated on a toilet would have to lean far to the side and forward in order to peer out in that manner. The individual did not wink or signal to the officer in any way. Hurst testified that he had noticed other persons peering through toilet stall cracks previously, and that the "majority of individuals engaged in that behavior were engaged in lewd conduct." He also testified, however, that it was his standard practice to walk by the stalls and look in, regardless of whether he had any prior indications of unlawful conduct.

The detective then approached to approximately 1 foot away from the front of the stall door and deliberately looked over the top of the door, casting his eyes downward toward the top of the toilet seat. His head did not protrude through the plane of the stall, nor did he stand on his tiptoes. At that time, he observed an individual, later identified as Bruce Nalder, seated on the toilet, displaying his penis and making slow stroking motions in a manner that the detective testified was consistent with masturbation.

Hurst arrested Nalder and cited him with lewd conduct in violation of Tukwila Municipal Code 8.50.020.[1]

At all relevant times, the stall door was closed and locked. The top of the door is 4 feet 5¾ inches. Hurst is 6 feet 2 inches tall and has an eye height of 5 feet 8 inches. From a distance of 1 foot from the door, a person with eye height of 5 feet 5 inches could view the middle of the toilet seat when gazing down at an angle of approximately 42½ degrees below horizontal. For purposes of the motion, the trial court assumed that any member of the public could walk outside the toilet stalls and look over the doors into the stalls.

The trial court denied Nalder's motion to suppress the detective's observations, finding that they occurred in open view, that any privacy expectations Nalder had by going into the stall and locking the door were seriously lessened because of the nature of the stall door's design, and concluding that no "search" occurred as that term is defined for purposes of the fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution.

Nalder appealed to the Superior Court, which reversed the trial court, finding that

1. [Nalder] had reasonable expectation of privacy, recognized as such by society, while he was seated in the toilet stall at Southcenter;

2. His rights of privacy under Washington Constitution, Art. 1, Sec. 7 and United States Constitution, Fourth Amendment, were violated when a plainsclothes [sic] detective, without probable cause, deliberately looked into the toilet stall to observe [Nalder]'s activities.

3. The "open view" doctrine is inapplicable to this case. The officer purposely entered the restroom [sic] to

---

[1]Although it is not clear from the record provided this court, apparently Nalder was charged under Tukwila Municipal Code 8.50.020(b), which provides: "Lewd Conduct Prohibited. No person shall intentionally perform any lewd act (1) in a public place, or (2) in any place under such circumstances as to make it difficult for an unwilling member of the public to avoid exposure."

view the activities of the toilet stall occupants and deliberately looked over the top of a closed, locked door to view any activities without reasonable suspicions. The area viewed is one which society is prepared to recognize as private.

The City of Tukwila sought and was granted discretionary review in this court.

## II

The issue presented is whether Nalder's Fourth Amendment rights or his rights under Washington Constitution article 1, section 7 were violated by the actions of Detective Hurst. The City argues that no search was conducted because Nalder had no reasonable expectations of privacy while he was seated in the rest room stall and because the detective's observations were made in "open view". Alternatively, the City argues that if a search occurred, its scope was justified based on the detective's reasonable suspicion of criminal activity. Nalder responds that he had a reasonable expectation of privacy in the closed, locked toilet stall, that the "open view" doctrine does not apply here because the detective's actions were deliberate, not inadvertent, and that the detective had neither reasonable suspicion nor probable cause to sustain a search.

■ Initially, we address the proper standard of review of this issue. While the trial court's findings following a suppression hearing are of great significance to a reviewing court, the constitutional rights at issue compel our independent evaluation of the evidence. *State v. Daugherty,* 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958, 67 L. Ed. 2d 382, 101 S. Ct. 1417 (1981).

We consider first whether Nalder had a legitimate expectation of privacy. Const. art. 1, § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Numerous cases have held that Const. art. 1, § 7 provides greater protection to persons than U.S. Const. amend. 4 provides. *See, e.g., State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984). Thus, while interpretation of the parallel federal constitutional

provisions may provide guidance in interpreting our own, we must ultimately rely on the hierarchy of values and principles that have been developed under the Washington Constitution. *See Myrick,* 102 Wn.2d at 510; *State v. White,* 97 Wn.2d 92, 108–09, 640 P.2d 1061 (1982).

■ The relevant inquiry for determining when a search has occurred under Const. art. 1, § 7 is whether the State unreasonably intruded into the defendant's "private affairs," *State v. Kennedy,* 107 Wn.2d 1, 5, 726 P.2d 445 (1986), focusing on those privacy interests which citizens of this state should be entitled to hold safe from governmental trespass absent a warrant. *Myrick,* 102 Wn.2d at 510–11. In *State v. Berber,* 48 Wn. App. 583, 587–88, 740 P.2d 863, *review denied,* 109 Wn.2d 1014 (1987), the court concluded that the inquiry under our state constitution was essentially the same as a Fourth Amendment analysis. The "reasonable expectation of privacy" test has its origins in a wiretap case, *Katz v. United States,* 389 U.S. 347, 361, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (Harlan, J., concurring), in the following language: "[T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'"

Assuming that the federal test yields no less restrictive guidelines than those required by our Const. art. 1, § 7,[2] we analyze Nalder's privacy right accordingly. It is obvious that Nalder had a subjective expectation of privacy, thereby answering the first prong of the test in the affirmative. Whether Nalder's subjective expectation is reasonable remains to be considered.

---

[2]As this court stated in *Berber*:

"It is unclear after *Myrick* and [*State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986)] whether the 2–prong expectation of privacy test developed by the United States Supreme Court for purposes of Fourth Amendment analysis is to be retained under a Const. art. 1, § 7 analysis . . . In the absence of any clear indication from our Supreme Court as to applicability of the federal test, we will analyze search and seizure issues by reference to that test." (Footnote and citations omitted.) *State v. Berber,* 48 Wn. App. 583, 587–88, 740 P.2d 863, *review denied,* 109 Wn.2d 1014 (1987).

In *State v. Berber, supra,* this court addressed a similar issue. There narcotics were seized from a man standing at a partially enclosed toilet by an officer who approached him from behind to within 2 inches and peered over his shoulder. *Berber,* 48 Wn. App. at 584–85. The court (Chief Judge McInturff strongly dissenting) upheld the search, finding that Berber did not have a legitimate or reasonable expectation of privacy since the toilet was visually accessible to anyone entering the rest room, it was obvious from Berber's behavior that he was not using the area for its customary purpose, and the officer's method of observation was not clandestine or surreptitious. *Berber,* 48 Wn. App. at 590–92.[3]

■ The facts before us are markedly different from the *Berber* facts. Nalder was in a stall behind a locked door. Based on widely accepted social norms, the area within an occupied toilet stall is properly characterized as "private." *Berber,* 48 Wn. App. at 589. While it is true that these privacy expectations are strongest where the toilet in a public rest room is fully enclosed, *see People v. Mercado,* 68 N.Y.2d 874, 501 N.E.2d 27, 508 N.Y.S.2d 419 (1986), *cert. denied,* 479 U.S. 1095, 94 L. Ed. 2d 166, 107 S. Ct. 1313 (1987), numerous cases have held that the fact that a toilet or urinal is not completely shielded from public view does not necessarily destroy the expectation of privacy an occupant possesses. *See, e.g., Kroehler v. Scott,* 391 F. Supp. 1114, 1117–18 & n.4 (E.D. Pa. 1975); *People v. Triggs,* 8 Cal. 3d 884, 506 P.2d 232, 236, 106 Cal. Rptr. 408 (1973); *State v. Holt,* 291 Or. 343, 630 P.2d 854, 857 (1981).

When a person enters a toilet stall and closes the door, he has an expectation of privacy which "society would recognize as objectively reasonable." *See State v. Biggar,* 716 P.2d 493, 495 (Hawaii 1986). We conclude that the fact that

---

[3]The *Berber* court relied on four specific factors in its analysis. *Berber,* 48 Wn. App. at 588. We have not applied these factors in a formal way because we find that doing so would yield an awkward and inconclusive analysis. However, consideration of these factors is incorporated in our analysis, which would satisfy that "test."

the door here was only 4 feet 5¾ inches high does not significantly alter the occupant's reasonable expectation of privacy.

■ Given this high expectation of privacy, the officer's method of intrusion was sufficiently offensive to be deemed an unlawful search. It is generally held that a clandestine method of observation such as viewing through grates or vents will result in suppression of evidence. *See Triggs; Kroehler.* As the *Berber* court noted with regard to clandestine surveillance, "[t]hese secret observations subjected the innocent, as well as the guilty, to unreasonable intrusions." *Berber,* 48 Wn. App. at 592. A physical intrusion of an officer's head into a toilet stall has been deemed an unlawful search. *See Brown v. State,* 3 Md. App. 90, 238 A.2d 147, 149–50 (1968). However, physical protrusion need *not occur to constitute* intrusive action. Thus, although the officer's method was not clandestine, he freely admitted that it was his practice to come close enough to the stall doors to look in. He looked at anyone and everyone seated on toilets behind locked doors. This method of observation, subjecting "the innocent . . . to unreasonable intrusions" is sufficiently offensive to the privacy interests of citizens of this state to be deemed an unlawful search.

We next address the City's further contention that the detective's actions nevertheless do not constitute a search because he viewed the activity from a nonconstitutionally protected vantage point, thus satisfying the open view doctrine. An open view detection will not constitute a "search" within the meaning of article 1, section 7, *State v. Courcy,* 48 Wn. App. 326, 739 P.2d 98, *review denied,* 109 Wn.2d 1017 (1987), or the Fourth Amendment. *State v. Seagull,* 95 Wn.2d 898, 901–02, 632 P.2d 44 (1981).

Although an officer is free to keep his eyes open when he is in an area where he has a right to be, the officer is permitted only the same license to intrude as a reasonably

respectful citizen. Where the observation is made from such an impliedly open area, "[t]he object under observation is not subject to any reasonable expectation of privacy". *Seagull*, 95 Wn.2d at 902 (quoting *State v. Kaaheena*, 59 Hawaii 23, 28–29, 575 P.2d 462, 466–67 (1978)). However, the officer may not substantially or unreasonably depart from the nonconstitutionally protected area, nor may he use a "particularly intrusive method of viewing". *Seagull*, 95 Wn.2d at 903. If he does, he will intrude upon constitutionally protected privacy expectations.

Thus, whether the open view doctrine applies depends on how the questions posed in the privacy analysis are answered. First, since we have determined that Nalder had an objectively reasonable expectation of privacy behind the closed toilet stall door, we have also decided that he was in a constitutionally protected area. Second, we have determined that the officer's observation was impermissibly intrusive, and therefore, the open view doctrine does not apply. *See Seagull*, 95 Wn.2d at 902–03.

The City's final argument is that even if a search occurred, the fact that the detective observed Nalder peering out combined with his own experience that this was consistent with lewd conduct raised a reasonable suspicion of unlawful behavior justifying a *Terry*[4] search. However, the detective did not testify that he relied on an articulable suspicion of criminal activity to justify his search. Rather, the detective candidly testified that it was a part of his routine to look into the stalls whether or not he had a suspicion of unlawful behavior. Thus, the State's argument fails.

The Superior Court properly reversed the denial of Nalder's motion to suppress. Affirmed.

GROSSE, J., concurs.

---

[4]*Terry v. Ohio*, 392 U.S. 1, 20–22, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

WILLIAMS, J.* (dissenting)—I dissent. The officers neither intruded upon Nalder's "legitimate expectation of privacy" (Fourth Amendment) nor disturbed him in his "private affairs" (article 1, section 7 of the Washington Constitution). A public toilet is a public toilet. That Nalder had a "high expectation of privacy" when using the Southcenter toilet is simply not true. Rather, the only reasonable expectation for him was that in the ordinary course of events he would relieve himself in the presence of other members[5] of the public similarly situated either at a urinal fully exposed or while sitting on the toilet. A partial toilet door might protect the user from possible assault, he then being in a particularly vulnerable position, but it does not create a private sanctuary for illicit behavior.

The two constitutional provisions are among the most noble ever devised to protect and preserve the dignity and integrity of the individual human being. To use them in this ludicrous way as a shield for unsocial, criminal conduct in a public rest room trivializes and demeans them.

---

*Judge Ward Williams is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

[5]This discourse is of necessity confined to the male gender.