[No. 63092-5.   En Banc.]
Argued March 26, 1996.      Decided May 9, 1996.

THE STATE OF WASHINGTON, *Respondent*, v. GREGORY K. WHITE, *Petitioner*.

*Ende, Subin & Philip,* by *Andrew L. Subin*; and *Nielsen & Acosta,* by *Eric J. Nielsen* and *Eric Broman,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

MADSEN, J. — Petitioner Gregory K. White was convicted of possession of cocaine with the intent to deliver. He appealed to the Court of Appeals, Division I, on grounds that the trial court erred in denying his motion to suppress evidence. The Court of Appeals affirmed. At issue is whether police need a warrant to arrest a suspected felon in a toilet stall of a public restroom.

## FACTS

The facts are undisputed. On April 2, 1992, at approximately 5:20 p.m., a team of Seattle police conducted a narcotics surveillance operation near Third Avenue and Virginia Street in Seattle. Officer Magee was positioned on the roof of a parking garage overlooking the street. He used binoculars to aid his vision as he watched for narcotics transactions. Officers Pugel and Henshaw, acting as the arrest team, patrolled the immediate area awaiting instructions from Magee to make arrests.

Magee observed White and another male, a juvenile, walking together southbound on Third Avenue. The two turned the corner eastbound on Virginia Street where they stopped and stood three to five feet apart. An unidentified man wearing a white sweat suit approached White. After a brief discussion, White pointed to the juvenile. The man in the white sweat suit walked over to the juvenile and the two began to walk eastbound on Virginia

Street. White followed at a distance of three to five feet. As the three males walked slowly down the street the man in the white sweat suit pulled money from his pocket and counted it. The juvenile pulled something from the pocket of his shorts and dropped it to the ground. The man in the white sweat suit stopped, picked the object up from the ground, examined it, put it in his mouth, then handed the money he had just counted to the juvenile. As this occurred, White looked back and forth over his shoulders to the surrounding area.

Shortly thereafter the group separated. White and the juvenile walked in one direction as the man in the white sweat suit walked in the opposite direction. All the while White maintained his distance from the juvenile. When the juvenile caught up to White, Magee observed "hand movements" between them but could not tell whether anything had been passed. Verbatim Report of Proceedings (VRP) at 110. The two continued to walk together until they reached Steve's Broiler, a restaurant located at the corner of Fourth Avenue and Virginia Street. Once there White entered the restaurant and the juvenile remained outside.

Magee radioed Officers Pugel and Henshaw, giving the location and description of the suspects. When the officers reached the location, the juvenile was found leaning against a light pole outside Steve's Broiler. Henshaw arrested him. Pugel went inside the restaurant to arrest White. Pugel asked the restaurant manager if a man meeting White's description had entered the establishment. The manager directed Pugel to the restroom. Pugel testified that upon entering the restroom he saw brown shoes and purple sweat pants from under one of the stalls, clothing matching the description Magee had given of one of the suspects. No one else was in the restroom. Pugel further testified that he looked over the stall door and saw White sitting on the toilet with his pants below his knees and currency lying on top of his underwear. At this point Pugel informed White that he was under arrest and

instructed him to come out of the stall with his pants down.

When White emerged from the stall, Pugel removed the money from the crotch area of White's pants, then handcuffed him. At some point White was allowed to pull up his pants. By this time there were other officers present. Magee arrived and positively identified White as one of the suspects. Following Magee's identification, Pugel began searching White and his jacket which had been retrieved from the stall. Pugel found currency, a pager, and 2.9 grams of suspected rock cocaine.

White moved pretrial to suppress this evidence. The motion was denied. A jury found White guilty as charged. White appealed to the Court of Appeals, Division I, which affirmed. *State v. White*, 76 Wn. App. 801, 888 P.2d 169, *review granted*, 127 Wn.2d 1017 (1995). The court held that White's arrest was based on probable cause, that a warrantless search for White in the toilet stall was reasonable, even in the absence of an exception to the warrant requirement, and that, in the alternative, the evidence was admissible under the inevitable discovery rule.

This Court granted White's petition for review.

## ANALYSIS

The question presented here is whether police must obtain a warrant before making an arrest, based on probable cause, in a public toilet stall.[1] In *United States v. Watson*, 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598, *rehearing denied*, 424 U.S. 979 (1976), the Supreme Court upheld a warrantless arrest in a restaurant. In reaching its decision the Court reviewed the history of arrest under common law and found that " '[t]he usual rule is that a police officer may arrest without warrant one believed by

---

[1]White says he does not concede probable cause. He has not, however, challenged the Court of Appeals determination that the officers had probable cause to arrest him. He has neither raised the issue nor presented legal argument on it. Supplemental Br. of Pet'r at 6 n.1.

the officer upon reasonable cause to have been guilty of a felony. . . .' " *Id.* at 417 (quoting *Carroll v. United States*, 267 U.S. 132, 156, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790 (1925)). It then reviewed its case law pertaining to arrest and concluded that none of its cases has " 'invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant.' " *Watson*, 423 U.S. at 417-18 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 113, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975)).

Since *Watson* the Court has drawn a distinction between an arrest in public and an arrest made in a suspect's home. In *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), the Court held that, absent exigent circumstances or consent, a warrantless entry into a suspect's home to make an arrest violates the Fourth Amendment, stating that "the Fourth Amendment has drawn a firm line at the entrance to the house." *Id.* at 590. As in *Watson*, the Court reviewed the history of warrantless home arrests under common law to determine the practice at the time the Constitution was drafted. Unlike the history pertaining to warrantless arrests in public places, the Court "found no direct authority supporting forcible entries into a home to make a routine arrest and the weight of the scholarly opinion is somewhat to the contrary." *Id.* at 598. Ultimately, the Court was persuaded that the "overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic" mandates an arrest warrant to justify entry into a person's home for the purpose of making an arrest. *Id.* at 601.

Reaffirming the sanctity of the home, the Court has also found that a search warrant is required to enter the home of a third person in order to effect an arrest. *Steagald v. United States*, 451 U.S. 204, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981). In *Steagald,* the police entered the defendant's home to make an arrest of a third person who was believed to be staying in the defendant's home. Although police had an arrest warrant for the third person, the Court

stated that the arrest warrant did not sufficiently protect the interest of the homeowner to be free from unreasonable search. *Id.* at 221. In *Steagold,* the Court also reaffirmed its holdings in *Payton* and *Watson,* stating that an arrest warrant is sufficient to justify entry into the suspect's own home to effect arrest and that a warrantless arrest may be made in a public place. *Id.* at 221.

In *State v. Solberg,* 122 Wn.2d 688, 861 P.2d 460 (1993), this Court also distinguished arrests made inside a residence from arrests made in public under the State Constitution.[2] In that case, the defendant voluntarily came out of his house and onto the porch where he was arrested without a warrant. *Id.* at 696. This Court upheld that arrest against an art. I, § 7 challenge, stating that "the protections afforded in *Payton* clearly do not apply outside the physical boundaries of the home as the theoretical basis of the *Payton* decision is that an arrest within a home violates the sanctity of the home whereas outside the boundaries of the home, no such violation is present." *Id.* at 700.

In the instant case, the Court of Appeals found that a bathroom stall is a constitutionally protected area, implicitly extending *Solberg* and *Payton* beyond the protection of the home. As support for its finding, the Court of Appeals relied on *City of Tukwila v. Nalder,* 53 Wn. App. 746, 770 P.2d 670 (1989). In *Nalder,* a Tukwila detective in plainclothes, conducting a routine patrol, entered a public restroom located in the Southcenter Mall. *Id.* at 747. The detective noticed an individual from inside a stall peering through the crack between the door of the stall and a support post. *Id.* This drew the detective's attention and he walked to within a foot of the stall door and deliberately looked over the top of the door. *Nalder,* 53 Wn. App. at 747. The detective observed Nalder sitting on the toilet masturbating. *Id.* Nalder was arrested and charged with

---

[2]White argues a violation of both the Fourth Amendment and Const. art. I, § 7, but does not argue that Const. art. I, § 7 offers any greater protection in this case.

lewd conduct. *Id.* at 748. The trial court denied Nalder's motion to suppress. *Id.* Nalder appealed to the superior court, which reversed. *Id.* That decision was appealed to the Court of Appeals. *Id.* at 749. At issue was whether Nalder's Fourth Amendment rights or his rights under art. I, § 7 were violated by the detective. *Id.* The court affirmed, holding that a person in an enclosed public toilet stall has an expectation of privacy that society recognizes as reasonable. *Id.* at 751. Moreover, the court concluded that the detective's method of looking at "anyone and everyone seated . . . behind locked doors" was "sufficiently offensive" to the privacy interests of citizens of this state "to be deemed an unlawful search." *Id.* at 752.

■ The *Nalder* court correctly recognized that an individual has a reasonable expectation of privacy in respect to those bodily functions which take place in a bathroom stall. It did not hold, however, that a bathroom stall is a constitutionally protected place. As the Supreme Court stated in *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), the Fourth Amendment "protects people, not places" from unreasonable government intrusions. *See also State v. Myrick*, 102 Wn.2d 506, 688 P.2d 151 (1984) (Const. art. I, § 7 protects against unreasonable intrusion in a person's privacy interests). Although the Fourth Amendment "place" protection described in *Payton* has been extended to other residential premises, including temporary residential premises such as hotel and motel rooms, a public toilet stall is not a residential area, nor does the analytical underpinning leading to the protection of a residence, sanctity of the home, apply to a toilet. *See* 2 WAYNE R. LaFAVE, SEARCH & Seizure § 6.1(c), at 581 (2d ed. 1987). We hold that a toilet stall is not entitled to the same "place" protection as is the case with a home.

There is another important distinction between *Nalder* and the present case. The issue in *Nalder* was whether police could search an occupied bathroom stall under circumstances where the officer lacked even a reasonable

suspicion of criminal activity being engaged in by the occupant of the stall. In that case, the police officer made an exploratory search to gather evidence. In the present case, the police were effecting a warrantless arrest in a public place based on probable cause.

■ The difference here between arrest and search was addressed briefly in *Payton*. There the Government argued that only a search warrant based on probable cause to believe the suspect was in his home could satisfy the privacy interests at stake in that case and that since such a warrant was "manifestly impractical" no warrant should be required. *Payton*, 445 U.S. at 602. The Court rejected that argument, recognizing that the arrest warrant carries with it the limited authority to enter the dwelling and arrest the defendant. *Id.* at 603. Similarly, where a warrantless arrest based on probable cause may be made, the fact that some intrusion is necessary to effect the arrest does not turn the arrest into a search. Under the facts of this case, we do not characterize Officer Pugel's conduct as a search for White. Pugel had followed White into the public restroom. White was the only person in the restroom and Officer Pugel recognized White's distinctive shoes and purple sweat pants under the stall door. We conclude that Pugel's limited intrusion into the stall falls within the officer's authority to make a warrantless arrest in a public place based on probable cause. The officer's intrusion into White's stall to effect a warrantless arrest does not offend either the state or federal constitutions.

■ The search at issue here did not take place until after the officer made an arrest and ordered White out of the stall. Incident to arrest the cocaine, pager, and additional money were found. A warrantless search is not presumed to be invalid under the Fourth Amendment if it is made incident to a lawful arrest. *State v. Smith*, 119 Wn.2d 675, 678, 835 P.2d 1025 (1992). The validity of a search incident to arrest depends upon the existence of exigent circumstances such as the need to seize weapons which the arrestee may seek to use to resist arrest or

escape or the need to prevent the destruction of evidence of the crime. *See Chimel v. California,* 395 U.S. 752, 762-63, 89 S. Ct. 2034, 23 L. Ed. 2d 685, *rehearing denied,* 396 U.S. 869 (1969). Pugel's search of White was justified incident to his arrest.

In light of our analysis, we do not reach the question whether the evidence obtained during the search incident to arrest was admissible under the inevitable discovery doctrine. The order denying suppression is affirmed.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.