150 P.3d 130 (2007)
STATE of Washington, Respondent,
v.
Michael E. MALONE, Appellant.
In the Matter of the Personal Restraint Petition of Michael E. Malone, Petitioner.
Nos. 23696-0-III, 23711-7-III, 24362-1-III.
Court of Appeals of Washington, Division 3.
January 9, 2007.
*131 Susan M. Gasch, Spokane, for Appellant.
Kevin M. Korsmo, Andrew J. Metts, III, Spokane, for Respondents.
SWEENEY, C.J.
¶ 1 We have consolidated Michael E. Malone's two appeals and his personal restraint petition because they share an essential assignment of error. RAP 3.3(b). Mr. Malone withdrew his pleas of guilty to two drug counts, one for possession and one for delivery of methamphetamine. The pleas followed a plea agreement. He elected instead to go to trial on five counts. This turned out to be a mistake. The jury convicted him on all counts. The right to plead guilty is statutory, not constitutional. CrR 4.2; In re Pers. Restraint of Mayer, 128 Wash.App. 694, 703, 117 P.3d 353 (2005). Mr. Malone nonetheless contends that the trial court committed constitutional error in allowing him to withdraw the pleas. He asks us to reinstate the original plea bargain. He also challenges the court's rulings on his motion to suppress evidence obtained during the search and seizure leading to his arrest.
¶ 2 The court acted within its discretion in vacating the pleas. Both the State and the defendant repudiated the agreement. Mr. Malone has never shown that his offender score was wrong. And the State kept the offer open so that Mr. Malone could reconsider with the benefit of new counsel.
¶ 3 The record supports the court's suppression rulings. We therefore affirm the convictions.

FACTS
¶ 4 A state patrol trooper followed a car for several miles. He pulled it over for failing to keep right except to pass. Mr. Malone sat in the backseat of the car. The trooper noticed that Mr. Malone was not wearing a seat belt. He asked Mr. Malone for identification. Mr. Malone gave a false name and date of birth. The trooper discovered the *132 name Mr. Malone gave was false. Mr. Malone admitted as much and said he had done so because he had a warrant out for his arrest. The trooper arrested Mr. Malone for obstructing him in the performance of his duty and searched the car incident to the arrest. He found prescription pills and drug paraphernalia. The trooper then arrested Mr. Malone for possession and took him to jail. The booking officers searched him and found a small amount of methamphetamine in the coin pocket of his jeans.
¶ 5 The State charged Mr. Malone with possession of methamphetamine. Later, in another case the State charged four counts of delivery based on separate unrelated controlled buys.
¶ 6 The State offered Mr. Malone a plea bargain: he could plead guilty to one count of possession and one count of delivery. The State would then drop the remaining three delivery counts. Mr. Malone accepted. Both he and his lawyer signed an agreed "Understanding of Defendant's Criminal History" as part of the agreement. That "Understanding" set out Mr. Malone's prior criminal history including convictions for grand theft, bail jumping, unauthorized use of a motor vehicle, and several misdemeanors. The convictions supported an offender score of four. And that score became the basis for the written agreement to plead guilty. Mr. Malone pleaded guilty. And the court accepted his pleas as free and voluntary after the appropriate colloquy.
¶ 7 Later, Mr. Malone appeared for sentencing. He questioned the offender score of four set out in his statement on plea of guilty. The State then moved to vacate the pleas. The State argued that the challenge to the offender score breached the plea agreement. The court asked the parties to brief the issue and set a hearing on the State's motion to vacate.
¶ 8 Later the parties appeared before a different judge. Mr. Malone told the court he wanted to fire his public defender and hire private counsel. The court discharged the public defender and then proceeded with a hearing on vacating the pleas. The State agreed to hold open its plea offer for a few weeks to allow Mr. Malone time to consult his new lawyer. The court asked him if he wanted to withdraw the pleas. Mr. Malone said he did:
THE DEFENDANT: My question to this is that agreement to the plea that was supposedly there, before Judge Price or the honor came out, these two, I say with respect, were I guess discussing my case, and the agreement that I understood was as in the months, of course, which is already done, but the essential points behind that, sir, and
THE COURT: Just tell me this. Do you want to adopt and unequivocally at this time tell the Court that you want to adopt the plea agreement as it was entered into before Judge Price, or do you want it vacated?
THE DEFENDANT: I'm trying to understand when you say vacate. I understand the vacate was to
THE COURT: Erase it.
THE DEFENDANT: Erase it out.
THE COURT: Erase it out. It didn't happen. Do you want to go to where you were before you agreed on the plea?
THE DEFENDANT: I think it would be necessary so I would have a chance to prove myself on these cases.
THE COURT: I'm just going to do this. We're going to vacate the plea in both cases, and it's with the understanding that the State has made a comment that they will re-initiate the negotiation and re-offer the plea as soon as they're advised of who they're dealing with as counsel for the defendant, Mr. Malone.
Report of Proceedings (RP) (No. 23696-0-III) (May 6, 2004) at 15-16.
¶ 9 The court vacated both pleas on the understanding that the State would give Mr. Malone time to confer with new counsel and then offer the same deal. No plea deal was ever signed. Mr. Malone elected, instead, to go to trial.
¶ 10 He moved pretrial to suppress the drug evidence for the possession charge on the grounds the seat belt infraction was bogus and the detention and search exceeded the lawful scope of the stop. The State *133 defended the stop and argued to admit the drugs based on the search incident to arrest. The court denied the motion to suppress.
¶ 11 A jury found Mr. Malone guilty as charged.

DISCUSSION
VACATION OF PLEAS
¶ 12 Mr. Malone now contends that the court improperly granted the State's request to vacate his guilty pleas. He asserts that the court should have calculated a correct offender score before it considered vacating the pleas. The State responds that Mr. Malone asked to withdraw from the plea agreement and the court merely acceded to that request. The State also argues that Mr. Malone has a right to a fair trial but has no right to plead guilty. And, moreover, the agreement was again tendered and rejected by Mr. Malone. In other words, he chose to reject the offer to plead guilty and to go to trial instead.
¶ 13 The right to plead guilty is statutory, not constitutional. CrR 4.2; Mayer, 128 Wash.App. at 703, 117 P.3d 353. Due process requires that a defendant understand the terms of a guilty plea agreement and freely accept them. That is, the plea must be knowing, intelligent, and voluntary. Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A defendant may withdraw a guilty plea to correct a "manifest injustice." CrR 4.2(f); State v. Bao Sheng Zhao, 157 Wash.2d 188, 197, 137 P.3d 835 (2006). Manifest injustice includes circumstances where "`(1) the plea was not ratified by the defendant; (2) the plea was not voluntary; (3) effective counsel was denied; or (4) the plea agreement was not kept.'" Bao Sheng Zhao, 157 Wash.2d at 197, 137 P.3d 835 (quoting State v. Marshall, 144 Wash.2d 266, 281, 27 P.3d 192 (2001)).
¶ 14 We review the trial court's decision for abuse of discretion. State v. Conley, 121 Wash.App. 280, 284, 87 P.3d 1221 (2004). A court abuses its discretion when its decision is made for untenable reasons or is based on untenable grounds. State v. Flinn, 154 Wash.2d 193, 199, 110 P.3d 748 (2005). The appellant has the burden of proving abuse of discretion. Id.
¶ 15 As a preliminary matter, a criminal defendant has no constitutional right to enter a guilty plea. This right stems solely from CrR 4.2 (right to plead not guilty, not guilty by reason of insanity, or guilty). State v. Martin, 94 Wash.2d 1, 4, 614 P.2d 164 (1980); Mayer, 128 Wash.App. at 703, 117 P.3d 353. What Mr. Malone had was a constitutional right to a fair trial,[1] which is what he received when he withdrew his pleas. Mr. Malone did not have a constitutional right to a plea bargain. Weatherford v. Bursey, 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); State v. Wheeler, 95 Wash.2d 799, 804, 631 P.2d 376 (1981). But the Sentencing Reform Act of 1981, chapter 9.94A RCW, does limit the court's sentencing authority, even if the defendant pleads guilty. In re Pers. Restraint of Moore, 116 Wash.2d 30, 34, 803 P.2d 300 (1991). The mere existence of a plea bargain does not diminish the defendant's right to be sentenced strictly according to its terms. In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 870, 50 P.3d 618 (2002); Moore, 116 Wash.2d at 38, 803 P.2d 300.
¶ 16 And Mr. Malone is correct that the rules do not provide for the court to vacate a plea on the State's motion. The court may allow withdrawal of a plea on the defendant's motion to correct a "manifest injustice." CrR 4.2(f); State v. Tourtellotte, 88 Wash.2d 579, 584, 564 P.2d 799 (1977). But there is no comparable provision for the State to vacate a plea. Tourtellotte, 88 Wash.2d at 584, 564 P.2d 799. Here, the court vacated the pleas only after establishing on the record that Mr. Malone himself wished to vacate his pleas. RP (No. 23696-0-III) (May 6, 2004) at 15-16.
¶ 17 Mr. Malone was represented by counsel when he agreed to plead guilty to two charges rather than the five the State charged him with. In furtherance of that agreement, both he and his lawyer stipulated to Mr. Malone's specific criminal history. And his lawyer further stipulated that the *134 offender score based on this history was four. Mr. Malone's essential argument on appeal is that the offender score he agreed to might not have been accurate. And the court then had the duty to revisit it, after the pleas as part of the sentencing process. And he certainly has the right to be sentenced based on an accurate criminal history, regardless of what criminal history he or his lawyer may have agreed to as part of the guilty pleas proceedings. See Goodwin, 146 Wash.2d at 867-68, 50 P.3d 618. We, nonetheless, reject his argument for a number of reasons.
¶ 18 First, there is no showing on this record that the offender score is anything but correct. Certainly no one argues or cites any authority to the effect that the offender score of four was wrong. Second, no one argued to the trial court that the offender score was wrong even though the State offered the same plea deal after Mr. Malone had been allowed to withdraw his pleas and hire new counsel. He elected instead to go to trial. He certainly could have accepted the plea deal again and then argued either in the trial court or here any clear legal error reflected by the offender score. Third, Mr. Malone with the advice of counsel agreed to both his criminal history and the resultant offender score. He does not suggest that his counsel was ineffective for doing this. In fact, Mr. Malone argues here on appeal that he was entitled to the same offer, with the same offender score, he rejected.
¶ 19 Mr. Malone told the sentencing court that the plea agreement did not, after all, reflect his understanding of his criminal history and that the offender score was too high. If a defendant pleads guilty in the mistaken belief that he can renegotiate an agreed minimum offender score at sentencing, the court does not abuse its discretion in vacating the plea. A plea based on a misunderstanding of the terms of the agreement is not knowing, intelligent, and voluntary. When both parties join in moving the court to perform an act within its discretion, a tenable reason exists for granting the motion. When a defendant raises an objection to his sentencing that amounts to a showing that his guilty plea was not knowing, intelligent, and voluntary, tenable grounds exist to vacate the plea.
¶ 20 We cannot conclude that the trial court abused its discretion by allowing Mr. Malone to withdraw his pleas under these circumstances.
SUPPRESSION ISSUES
¶ 21 The trial court concluded that the traffic stop that led to Mr. Malone's arrest was properly based on an uncontradicted violation of RCW 46.61.100(2), which requires freeway drivers to keep to the right except to pass. For the first time on appeal, Mr. Malone challenges the validity of the stop. RAP 2.5(a) precludes review of this issue.
¶ 22 Mr. Malone is correct that manifest constitutional error may be raised for the first time on appeal. RAP 2.5(a). The error referred to, however, is that committed by the trial court in admitting evidence, not by law enforcement in obtaining it. RAP 2.2, 2.3. A trial court does not err in admitting relevant evidence without objection. ER 402.
¶ 23 An appellant may show prejudice from his counsel's failure to move to suppress damaging evidence and seek review of the manifest constitutional error of ineffective assistance of counsel. We then review the record to see whether a plausible case for suppression could have been made and whether the evidence changed the outcome of the trial. If so, we may reverse on the ineffectiveness issue and remand for a CrR 3.6 hearing. See, e.g., State v. McFarland, 127 Wash.2d 322, 333-34, 899 P.2d 1251 (1995).
¶ 24 Here, Mr. Malone does not allege ineffective assistance, and we are in no position to make original findings and conclusions.
¶ 25 Mr. Malone assigns error to the court's findings on the seat belt infraction. Our review is limited to deciding whether substantial evidence supports a challenged fact. State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994). The court found that:
1.1 [Mr. Malone] was a passenger in a vehicle stopped due to illegal lane travel.

*135 1.2 The Trooper had reason to believe that [Mr. Malone] had not been wearing his seatbelt prior to the stop.
1.3 [Mr. Malone] was not wearing his seatbelt during the stop.
Clerk's Papers (CP) (No. 23711-7-III) at 104-05. The court's findings are easily supported by this record.
¶ 26 The trooper testified that he could see Mr. Malone bending forward as he followed in his patrol car. He asked Mr. Malone why he was not wearing his seat belt. Mr. Malone apologized. The belt was wedged down in the seat. And Mr. Malone began digging it out. This is sufficient grounds to issue a ticket for a seat belt infraction. The court apparently did not believe Mr. Malone's story that he removed the belt after being pulled over and that the trooper saw him remove it. The trier of fact is in a better position to assess the credibility of witnesses, take evidence, and observe the demeanor of those testifying. Hill, 123 Wash.2d at 646, 870 P.2d 313.
¶ 27 These and other findings support the court's conclusion that the contact with Mr. Malone was based on a bona fide seat belt violation.
¶ 28 A seat belt violation is a civil infraction, not a criminal offense. RCW 46.61.688. Certain traffic violations may be grounds for arrest. But Mr. Malone is correct that a seat belt infraction is not one of them. RCW 10.31.100. Mr. Malone had to identify himself, however, and give a current address when asked by this trooper investigating a misdemeanor. RCW 46.61.021(3), .022; State v. Chelly, 94 Wash.App. 254, 260, 970 P.2d 376 (1999). Mr. Malone, as a passenger, may not have had to carry a license or any other identification. State v. Cole, 73 Wash.App. 844, 849, 871 P.2d 656 (1994). He did, however, have to give his real name and current address when asked to do so and sign a receipt for the notice of infraction. RCW 46.61.021(3). "The requirement that one identify himself pursuant to an investigation of a traffic offense includes passengers of a vehicle stopped for a traffic infraction where the officer has an independent basis, such as a safety belt violation, for requesting a passenger's identification." Chelly, 94 Wash.App. at 259-60, 970 P.2d 376. Police may detain a person for a seat belt traffic infraction for a reasonable period of time to identify the person, check for outstanding warrants, and to issue a notice of infraction. RCW 46.61.021(2). But a lawful custodial arrest must be supported by probable cause. State v. White, 129 Wash.2d 105, 108-09, 915 P.2d 1099 (1996).
¶ 29 Mr. Malone gave a false name and birth date in response to the trooper's lawful inquiry. This hinders the police in the discharge of their duties. State v. Contreras, 92 Wash.App. 307, 316-17, 966 P.2d 915 (1998). This is the offense of obstructing and provides probable cause for arrest. RCW 9A.76.020(1). The trooper lawfully arrested Mr. Malone for obstructing. He was, accordingly, lawfully searched incident to the arrest. State v. Parker, 139 Wash.2d 486, 496, 987 P.2d 73 (1999).
¶ 30 The findings support the court's conclusion that Mr. Malone was legally arrested and searched incident to that arrest.
SUFFICIENCY OF THE EVIDENCE
Nature of Substance
¶ 31 Mr. Malone next argues that the jury was instructed it had to find that he knew that methamphetamine was a controlled substance. He contends there was no evidence that he knew the substance he was selling was controlled.
¶ 32 Evidence is sufficient to support a criminal conviction if, viewing it in the light most favorable to the prosecution, any rational trier of fact could find all the essential elements of the offense beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). And a circumstantial showing by the State is sufficient. State v. Bryant, 89 Wash.App. 857, 870-71, 950 P.2d 1004 (1998).
¶ 33 Here, the State showed that, when given $40 and $80, or when asked for "crank" or if he had "anything," Mr. Malone produced bags of a substance that tested positive for methamphetamine. 1RP (No. 23696-0-III) at 8-10, 62, 122. And he asked for a "bump"a portion of the drugs transacted *136 for acting as the middleman. Id. at 70-72. This was sufficient to support an inference that Mr. Malone knew that the substance he was selling was a controlled substance and that the substance was methamphetamine.
Sale in a Public Park
¶ 34 The State sought a sentence enhancement for delivery of a controlled substance in a public park. Former RCW 69.50.435(a)(5) (1997). The court instructed the jury that a public park means "land, including any facilities or improvements on the land, that is operated as a park by the State or a local government." CP (No. 23696-0-III) at 39. Mr. Malone contends that the evidence was not sufficient to show that the delivery of a controlled substance occurred in a public park. He argues that none of the State's witnesses were qualified as experts and, therefore, could not testify that the park was public. The State responds that this is common knowledge. And, if that were not enough, a police planner and two police officers testified it was a public park.
¶ 35 Mr. Malone relies on State v. Henderson[2] for the proposition that expert testimony was necessary. In Henderson, we held that a plat map was not needed to show the boundaries of a city park for the sentence enhancement that follows delivery of a controlled substance in a city park. Henderson, 64 Wash.App. at 342, 824 P.2d 492. We also observed that, while the enhancement statute allows the introduction of a plat map to establish boundaries of the city park, the statute specifically provides: "`This section shall not be construed as precluding the prosecution from introducing or relying upon any other evidence or testimony to establish any element of the offense.'" Id. (citing former RCW 69.50.435(e)). The testimony of a city planner that the park boundaries contained the parking lot in which the transaction occurred was, then, sufficient. Id.
¶ 36 Here, both a police planner and a detective testified that the park was a city park. Mr. Malone did not object to the testimony. And the testimony was not the type of opinion to require an expert in any event. Both witnesses worked for the city and testified from their personal knowledge that the park was a city park. This is adequate to support the jury's finding that the park was a public park.

ADDITIONAL GROUNDS FOR REVIEW
¶ 37 As additional grounds for review, Mr. Malone assigns error to a number of the court's evidentiary rulings. He first complains that the court erred in admitting the testimony of Stacy Perryman that Mr. Malone was the person from whom she made a controlled buy because her testimony was inconsistent. She also denied that she signed her statement. Yet the jury specified that this statement was the determinative factor in finding Mr. Malone guilty of delivery.
¶ 38 Also, a 45-minute video that featured Mr. Malone for only 2 minutes was introduced into evidence. Mr. Malone complains that the only audio was police commentary. And, moreover, it had no probative value and only served to suggest incrimination without evidence.
¶ 39 Irrelevant evidence was also admitted about a controlled buy made by Glenda Davis, an informant in Mr. Malone's case, regarding a transaction unrelated to his case.
¶ 40 The cumulative effect of these errors, Mr. Malone contends, was a miscarriage of justice. The jury was erroneously led to believe that collateral occurrences should be given the same weight and consideration as proof regarding the actual event, without first establishing that the event actually occurred.
¶ 41 But Mr. Malone waived any claim of error here on appeal by not objecting at trial. State v. Coria, 146 Wash.2d 631, 641, 48 P.3d 980 (2002). The defense did not object to any of the evidence he now complains of, for good reason: it was all admissible.
¶ 42 The record does not support Mr. Malone's claim that Ms. Perryman disavowed her signature on her statement. She testified that it looked like her signature, but she *137 could not tell for sure because she was not a signature expert. 1 RP (No. 23696-0-III) at 117, 134.
¶ 43 We will not revisit a trial court's discretionary decision to admit video evidence absent "`a clear showing of abuse of discretion, that is, discretion manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" State v. Davis, 141 Wash.2d 798, 853, 10 P.3d 977 (2000) (quoting State v. Elmore, 139 Wash.2d 250, 284-85, 985 P.2d 289 (1999)). The video is not part of the record on appeal. However, a detective narrates a portion of the video on the record. 2 RP (No. 23696-0-III) at 228-29. Based on the officer's testimony, the video orients the jury to the scene and streets of travel as the video follows the movements of the informant on the controlled buy of July 31, 2001. This is relevant, probative evidence. And the court's decision to admit it was appropriate.
¶ 44 Mr. Malone next asserts that the court allowed evidence of an unrelated and, therefore, irrelevant transaction by the confidential informant. But the witness responded to a question concerning how she recognized Mr. Malone before the prosecutor completely finished the question. Ms. Davis began to say she recognized him from a drug buy at a different address. The prosecutor promptly interrupted her and steered her back to the subject charges. And the court gave the jury standard instructions on evidence that we presume it followed.

PERSONAL RESTRAINT PETITION
¶ 45 By way of a separate personal restraint petition, Mr. Malone argues that his conviction must be reversed under authority of State v. Morris because delivery of methamphetamine hydrochloride is not listed in former RCW 69.50.401 (1998). State v. Morris, 123 Wash.App. 467, 98 P.3d 513 (2004), overruled in part by State v. Cromwell, 157 Wash.2d 529, 532-36, 140 P.3d 593 (2006). And, therefore, it is an unranked class C felony and punishable by only less than 12 months' incarceration.
¶ 46 This court reviews questions of statutory construction de novo. State v. J.M., 144 Wash.2d 472, 480, 28 P.3d 720 (2001). We review the law in effect at the time of the offense. RCW 9.94A.345; State v. Bader, 125 Wash.App. 501, 503, 105 P.3d 439, review denied, 155 Wash.2d 1010, 122 P.3d 912 (2005). Mr. Malone committed the crime in 2001. The 2005 amendments to former RCW 69.50.401 did not become effective until July 24, 2005. LAWS OF 2005, ch. 218, § 1.
¶ 47 The former RCW 69.50.401 stated that a person violated this subsection if found in possession with intent to manufacture or deliver methamphetamine. Former RCW 69.50.401(a)(1)(ii). The later amendments to the statute included "salts, isomers, and salts of isomers" in the classification of a controlled substance such as methamphetamine. RCW 69.50.401(2)(b); LAWS OF 2005, ch. 218, § 1.
¶ 48 Mr. Malone asserts that under the former RCW 69.50.401 methamphetamine hydrochloride (salt) is not methamphetamine for purposes of prosecution. In Morris, Division Two of this court held that methamphetamine in former RCW 69.50.401(a)(1)(ii) refers only to base methamphetamine (the liquid) and does not include methamphetamine hydrochloride (the salt). Morris, 123 Wash.App. 467, 98 P.3d 513.
¶ 49 The Washington Supreme Court found this to be incorrect. Cromwell, 157 Wash.2d at 535-37, 140 P.3d 593. Salt and base methamphetamine are the same chemical substance. Id. at 535-36, 140 P.3d 593. Converting the liquid base into a solid methamphetamine salt is a functional refinement only. Id. at 536-37, 140 P.3d 593. Therefore, the Washington Supreme Court held that it is reasonable to infer that the definition of methamphetamine includes its salt form. Id. at 537, 140 P.3d 593. In other words, when the legislature used the word "methamphetamine" in the former RCW 69.50.401 the word included "all forms of the substance." Id. Therefore, Mr. Malone's argument is without merit. And we therefore dismiss the petition.
¶ 50 We affirm the convictions.
I CONCUR: BROWN, J.
*138 SCHULTHEIS, J. (dissenting).
¶ 51 The Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW, requires the sentencing court to calculate a defendant's offender score by the sum of points accrued under RCW 9.94A.525. State v. Ross, 152 Wash.2d 220, 229, 95 P.3d 1225 (2004). The State must prove the defendant's criminal history to the sentencing judge by a preponderance of the evidence, or the court may rely on the defendant's stipulation or acknowledgement of prior convictions to calculate the offender score. RCW 9.94A.441; RCW 9.94A.530(2); In re Pers. Restraint of Cadwallader, 155 Wash.2d 867, 873-74, 123 P.3d 456 (2005).
¶ 52 But "a defendant cannot, by way of a negotiated plea agreement, agree to a sentence in excess of that authorized by statute." In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 872, 50 P.3d 618 (2002). That includes a sentence based on an incorrect offender score calculation. Id. Because I believe the trial court discounted its role in calculating the offender score, which resulted in an abuse of its discretion by vacating the binding pleas, and because the pleas were vacated when Michael Malone was not represented by counsel, I must dissent.
¶ 53 The majority perceives no error because Mr. Malone agreed to withdraw his pleas, he misunderstood the plea terms, and he rejected the same plea agreement when it was re-offered. Majority at 134. Additional information must be considered to clarify the facts and to fully appreciate these issues. It is also important to consider the facts involving the court's decision to vacate the pleas when Mr. Malone was not represented by counsel. See State v. Robinson, 153 Wash.2d 689, 694, 107 P.3d 90 (2005) ("the right to counsel is constitutionally guaranteed at all critical stages of a criminal prosecution").
¶ 54 Mr. Malone never set out to withdraw his guilty pleas. When Mr. Malone appeared for sentencing with counsel at the first hearing on his guilty pleas, he argued that he was entitled to have the trial court calculate the offender score. The State claimed that his argument constituted a breach of their plea agreement. The State then asked that the guilty pleas be vacated.
¶ 55 At the second hearing, the court asked Mr. Malone if he wanted to discharge his appointed counsel. He said he did, but he stated that he was not going to be acting pro se. He stated that he contacted private counsel who he expected to appear in court that day but did not.
¶ 56 The trial court asked the public defender and the prosecutor whether appointed counsel should be discharged and the motion on the plea agreement continued to another time when Mr. Malone secured new counsel. The prosecutor indicated that the pleas could be vacated without harm because she would re-offer the same deal if Mr. Malone would agree to the offender score and sentencing range.
¶ 57 The public defender indicated that he did not think Mr. Malone wanted counsel to speak for him. The court then asked Mr. Malone if he wanted to proceed to discharge counsel or vacate the plea agreement. Mr. Malone twice began to speak, but the court interrupted him. On the second occasion the court stated, "Do you want me to go ahead and decide whether or not you can fire your attorney or not right now?" Report of Proceedings (May 6, 2004)(RP) at 13-14. Mr. Malone stated that he did. The court granted the motion. He told Mr. Malone: "I expect however that you immediately make every effort to get on board an attorney to make an appearance and to get involved." RP at 14.
¶ 58 On the vacation of the pleas, the State suggested "some colloquy would be helpful obviously" since Mr. Malone was unrepresented. RP at 14. The court responded, "But the colloquy is rather silly. He's going to get a lawyer. He's not telling me he wants to be pro se." RP at 14-15. The following exchange was held.
THE DEFENDANT: My question to this is that agreement to the plea that was supposedly there, before Judge Price or the honor came out, these two, I say with respect, were I guess discussing my case, and the agreement that I understood was as in the months, of course, which is already done, but the essential points behind that, sir, and

*139 THE COURT: Just tell me this. Do you want to adopt and unequivocally at this time tell the Court that you want to adopt the plea agreement as it was entered into before Judge Price, or do you want it vacated?
THE DEFENDANT: I'm trying to understand when you say vacate. I understand the vacate was to
THE COURT: Erase it.
THE DEFENDANT: Erase it out.
THE COURT: Erase it out. It didn't happen. Do you want to go to where you were before you agreed on the plea?
THE DEFENDANT: I think it would be necessary so I would have a chance to prove myself on these cases.
THE COURT: I'm just going to do this. We're going to vacate the plea in both cases, and it's with the understanding that the State has made a comment that they will re-initiate the negotiation and re-offer the plea as soon as they're advised of who they're dealing with as counsel for the defendant, Mr. Malone.
RP at 15-16.
¶ 59 The choice the trial court presented to Mr. Malone was untenable. In order to maintain the pleas that the court had accepted, the trial court required Mr. Malone to "unequivocally" reaffirm it. But to do that, the trial court required him to stipulate to an offender scorewhich turned out to be incorrect. Mr. Malone was required to forego his legal argument on the offender score, the State did not have to prove it, and the trial court did not have to decide it. See RCW 9.94A.441, .525. If Mr. Malone did not accept the reaffirmation of his guilty plea, the trial court would vacate it. To make matters worse, this proposal was made to and accepted by Mr. Malone when he was without counsel.
¶ 60 "A plea agreement is a contract between the defendant and the prosecutor." In re Pers. Restraint of Lord, 152 Wash.2d 182, 188, 94 P.3d 952 (2004) (citing State v. Turley, 149 Wash.2d 395, 400, 69 P.3d 338 (2003)). Once validly accepted by the court, a plea agreement is binding on the prosecutor and the court. State v. Schaupp, 111 Wash.2d 34, 38, 757 P.2d 970 (1988).
¶ 61 The trial court's misunderstanding of the law is reflected in the court's reason for its order vacating the pleas: "[T]he court finds that: good cause exists, defendant is not in agreement w[ith] plea agreement at this time & has affirmatively indicated so." Clerk's Papers (No. 23696-0-III) at 124. Mr. Malone did not disagree with the plea agreement. He wished to make a legal argument concerning the calculation of his offender score. Goodwin, 146 Wash.2d at 875-76, 50 P.3d 618. The trial court must decide the offender score. The trial court should have heard Mr. Malone's argument.
¶ 62 The majority found nothing in the record to indicate that the offender score of 4 advocated by the State was incorrect. Majority at 134. I disagree. The "Understanding of Defendant's Criminal History" signed on the date of the guilty pleas, February 26, 2004, sets forth two prior convictionsa 1980 Texas conviction for bail jumping and a 1980 Texas conviction for unauthorized use of a motor vehicle. A third conviction for grand theft in 1991, accounted for a third point toward Mr. Malone's offender score. He pleaded guilty to one felony in each case, for a total offender score of 4 in each case.
¶ 63 The two Texas convictions were not applied toward Mr. Malone's offender score when he was finally sentenced on November 30, after the trial, because those convictions washed out. The prosecutor ultimately agreed that the Texas convictions washed out, and that is what the judge found when Mr. Malone was sentenced after trial. Those two convictions were the basis of Mr. Malone's offender score argument.[1]
¶ 64 The majority discerned no argument by Mr. Malone to the trial court that the offender score was wrong. Majority at 134. *140 I think Mr. Malone did make an argument, although, made pro se, it is difficult to parse. Indeed, his argument was countered by the prosecutor. And the State made it quite clear that it wished to vacate the pleas as a direct consequence of Mr. Malone's desire to dispute the calculation of his offender score. That was the purpose of the hearing set by the State. Nonetheless, whether the offender score was incorrect or not, he still had the right to make the legal argument that certain convictions washed out.
¶ 65 The majority also thought that Mr. Malone agreed to the offender score and criminal history. Majority at 134. Yet the majority believes, and I agree, that Mr. Malone had a right to be sentenced based on an accurate criminal history, regardless of what he or his counsel agreed to in making his guilty pleas. Majority at 133-34; see Goodwin, 146 Wash.2d at 875-76, 50 P.3d 618 (holding parties do not waive legal issues of "wash out" convictions by failing to raise them at the trial level). Even though Mr. Malone agreed to the fact of the existence of his criminal history, he was entitled to argue the legal effect of the criminal history as it applied to his offender score.
¶ 66 The trial court ordered Mr. Malone's appointed counsel's withdrawal knowing that Mr. Malone did not wish to waive his right to counsel, yet it conducted a hearing to vacate his pleas in the absence of counsel. Even if Mr. Malone instigated a motion to withdraw his pleaswhich he did nothe would be entitled to counsel. State v. Harell, 80 Wash. App. 802, 804-05, 911 P.2d 1034 (1996).
¶ 67 Denial of the right to counsel at a hearing to withdraw a plea, a critical stage of the proceedings, is presumed prejudicial and warrants reversal without a harmless error analysis. Id. at 805, 911 P.2d 1034 (citing City of Seattle v. Ratliff, 100 Wash.2d 212, 219, 667 P.2d 630 (1983); State v. Robinson, 79 Wash.App. 386, 393, 902 P.2d 652 (1995)). And Mr. Malone did not make an unequivocal demand to proceed pro se or a knowing, voluntary, or intelligent waiver of his right to counsel. Id. (quoting State v. Sinclair, 46 Wash.App. 433, 437, 730 P.2d 742 (1986)).
¶ 68 I agree with the majority that Mr. Malone does not have a constitutional right to a plea bargain. See Majority at 132-34 (citing State v. Wheeler, 95 Wash.2d 799, 804, 631 P.2d 376 (1981)). But he does have a constitutional right to counsel.[2]E.g., State v. Silva, 108 Wash.App. 536, 542, 31 P.3d 729 (2001) (quoting Frazer v. United States, 18 F.3d 778, 782 (9th Cir.1994)); Robinson, 79 Wash.App. at 393-94, 902 P.2d 652 (citing Chapman v. California, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963))).
¶ 69 The majority also notes that the plea bargain was re-offered. Majority at 132-33. But it was only extended for 11 days, until May 21, 2004. Mr. Malone had no counsel appear on his behalf until that date. Also, within a week of the plea revocation hearing, Mr. Malone had been sentenced on the two other felonies. The damage was done before he got counsel.
¶ 70 I believe Mr. Malone is entitled to specific performance of the plea agreement. See State v. Tourtellotte, 88 Wash.2d 579, 585, 564 P.2d 799 (1977); State v. Harrison, 148 Wash.2d 550, 557, 61 P.3d 1104 (2003).
¶ 71 In summary, I would conclude that the trial court abused its discretion when it ordered that the guilty pleas be vacated. Further, I would hold that Mr. Malone was denied the right to counsel at a critical stage of the proceedings. Therefore, I would reverse the convictions and conclude that Mr. Malone is entitled to enforce the plea agreement.
NOTES
[1] State v. Silva, 107 Wash.App. 605, 621-22, 27 P.3d 663 (2001).
[2] State v. Henderson, 64 Wash.App. 339, 824 P.2d 492 (1992).
[1] Mr. Malone was still sentenced with 3 points on his offender score for prior convictions. Between the time Mr. Malone entered his guilty pleas and the time he was finally sentenced after the trial, there had been a disposition in two domestic violence cases on May 11, 2004. Thus, even with the Texas convictions washing out, his offender score again raised to include a total of three prior felonies.
[2] Mr. Malone did not develop a right to counsel argument on appeal. This court will generally decide only those issues raised by the parties. State v. Aho, 137 Wash.2d 736, 740, 975 P.2d 512 (1999). But when the issue is purely a legal one and the record is sufficient and clear, this court will sua sponte raise an issue and even rest the decision on that issue without further briefing. Id. at 740-41, 975 P.2d 512. This is a clear legal issue that dovetails and supports the plea issue raised by Mr. Malone.